**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GEORGE ALEA, Individually and On Behalf of All Others Similarly Situated** | |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **vs.** | Case No. 1:17-cv-00498 |
| **WILSON SPORTING GOODS CO. AND LOUISVILLE SLUGGER,** | **CLASS ACTION COMPLAINT** |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, George Alea ("Alea" or "Plaintiff"), individually and on behalf of all others similarly situated, and brings this action against Defendants Wilson Sporting Goods Co. ("Wilson") and Louisville Slugger ("LS") (collectively Wilson and LS shall be referred to herein as "Defendants") to obtain damages, restitution, and/or injunctive relief for the Plaintiff and proposed classes as defined herein from Defendants. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of their counsel, and the facts that are a matter of public record.

## INTRODUCTION

1. This action is brought to remedy violations of applicable law in connection with Defendants' design, manufacture, promotion and sale of Louisville Slugger Prime BBCOR baseball bats (the "Bats").

2. The Bats are expensive by any measure, costing approximately $400 each, and are purported to be of extremely high quality. In reality, however, the Bats suffer from a major

inherent design defect, which causes the handle of the Bats to rotate independent of the barrel when the Bats are used in the ordinary course (the "Defect"), substantially decreasing the effectiveness of the Bats for hitting, the sole and only purpose for which they are sold. To make matters worse, Defendants have systematically denied warranty coverage.

3.      Defendants have actual knowledge of the Defect and/or problems in the Bats. Defendants have known of the Defect for an extended period of time due to direct customer complaints and numerous Internet complaints. Rather than honor its warranty and replace the Bats with non-defective bats of equivalent value, Defendants took the unorthodox approach of creating a post-hoc marketing regime focusing on (and, indeed, promoting) the Defect, as if it were deliberate, as opposed to a Defect. Defendants used this disingenious change in their marketing jargon as a basis to deny warranty coverage to Plaintiff and the Class. This Court should not countenance Defendants' conduct; Defendants' should be held accountable for their actions and required to provide Plaintiff and members of the Class non-defective bats or a refund of the purchase price.

4.      Defendants' marketing and sales materials were designed to mislead and deceive consumers and therefore violate Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; California Business & Professional Code § 17200 *et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; Michigan Consumer Protection Act, Mich. Comp. Law § 445.901 *et seq.*; New Jersey Consumer Protection Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*

5.      Additionally, Defendants' failure to provide the Bats as warranted and failure to honor their warranty violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

6.     As a result of their purchase of the Bats, Plaintiff and the Class were damaged, in an amount to be determined at trial, because they paid valuable consideration for a product that was not as advertised or warranted, and was, as a result, worth substantially less.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Defendants' state of citizenship.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted occurred in or were directed from this District, as Defendants are both headquartered in Chicago.  Venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposefully avail themselves of the markets in this District, through the promotion, sale, and marketing of their products in and from this District.

## THE PARTIES

9.     Plaintiff George Alea is a resident of Miami, Florida.  On or about February 17, 2016, Mr. Alea purchased the 2016 Louisville Slugger Prime 916 BBP9163 BBCOR baseball bat.  Mr. Alea paid a total price of $424.98 for the Bat.  The Bat was purchased for Mr. Alea's son, Rod, to use during high school and recreational baseball games.  Shortly after purchasing the Bat, Plaintiff's son noticed movement between the barrel of the Bat and the handle when he hit with it.  Plaintiff used the Bat and independently observed the same movement between the handle and the barrel.  This is not a normal condition, nor how the Bat was advertised—at least not initially or when Plaintiff purchased his Bat.  There is no benefit or increased performance as

a result of this movement. Rather, the independent rotation of the handle and the barrel decrease the power and detract from the performance of the Bats. By summer, Plaintiff reached out directly to Louisville Slugger who claimed the Defect was normal and that Plaintiff could not receive a replacement bat pursuant to the warranty. A subsequent demand letter served on Wilson by Plaintiff's counsel at the headquarters address in which Wilson and LS are co-located was ignored.

10.    Defendant Wilson Sporting Goods Co. is a Delaware corporation with its headquarters located at 8750 West Bryn Mawr Avenue, Chicago, Illinois 60631. Wilson is an American subsidiary of the Finnish company, Amer Sports Corporations. Wilson boasts annual sales of approximately one billion dollars. In March 2015, Wilson purchased Louisville Slugger from Hillerich & Bradsby, Co. for approximately $70 million. Although, Hillerich and Bradsby retained certain rights in the Lousiville Slugger, those rights pertain to bats made of wood and the Louisville Slugger museum, neither of which are relevant to the instant litigation.

11.    Defendant Louisville Slugger is also headquartered at 8750 West Bryn Mawr Avenue, Chicago, Illinois 60631. Louisville Slugger has existed for approximately 120 years and in that time has sold over 100,000,000 baseball bats. Although historically Louisville Slugger has focused on wooden bats, in more recent times Louisville Slugger has focused considerable time and resources on bats made of other materials including metals and composite.

## FACTUAL ALLEGATIONS

12.    Throughout the Class Period, Defendants have manufactured, marketed and sold the Bats. The Bats are distributed nationwide by Defendants through numerous retailers, including "big box" retailers such as Dick's Sporting Goods, online retailers such as www.justbats.com and Amazon.com. During the Class Period Defendants produced promotional

4

materials that accompanied the Bats.  An example of the promotional information drafted and disseminated by Defendants from June 2015 through April 2016, appears below:

> Description for 2016 Louisville Slugger Prime 916 BBCOR Baseball Bat
> Maximum SPEED - Extreme POWER - Ultimate BALANCE : The Louisville Slugger Prime 916 BBCOR Baseball Bat: BBP9163 is here! With the introduction of their 2016 bat line, players around the nation are finding out why more Top 25 teams in NCAA baseball step into the box with a Louisville Slugger in their hands. Slugger made waves in the market with a never-before-seen 3-Piece bat construction, but the TRU3 Explosive Power Transfer Technology in the Prime 916 amplifies those performance characteristics even further by drastically eliminating sting while allowing for maximum trampoline effect and a true feel on contact. Combine that with the newly created FCS (Fused Carbon Structure) Composite and Flex Band Technology, the Prime 916 showcases the lightest swing weight and largest sweet spot in the 2016 Slugger lineup. This BBCOR certified model features the Flex Band Technology in its barrel. By inserting a 1" composite disc right below the sweet spot, the team in Louisville is able to meet BBCOR standards while keeping the barrel walls as thin as possible. Thinner barrel walls results in a lighter feel, larger sweet spot, and maximum trampoline effect on contact. Doesn't sound too bad, right? Louisville Slugger is more than confident that they've created the best bat in baseball and they're backing it up with the 30-Day Performance Promise. If you're not more confident in your swing in 30 days, send it back! Rounded out by a slick new graphic design and premium Lizard Skins grip tape, the Prime 916 combines comfort and style and is sure to help each hitter "Own The Plate"! The Louisville Slugger Prime 916 is backed by a Full Twelve (12) Month Manufacturer's Warranty. Free Shipping!

13.     Nowhere does the above-referenced promotional material discuss or even mention that the handle and barrel twist independent of one another (the "Defect")—a highly uncommon and undesirable occurrence for any baseball bat.

14.     The release of the bat coincided with an onslaught of complaints concerning the Defect in the Bats.  Indeed, the Internet is replete with complaints about the Bats.  Below are excerpts from just some of the complaints on just one website (www.justbats.com), which appear without grammatical or typographical alteration:

## "Bat Broke Easily"
*by Manny Machado (player)*

- **Cons:** I have broken this bat 3 times. It is not worth the money you are going to pay for it. Trust Me

## "Not Worth the Money"
*by Shannon Williams (parent)*

- **Cons:** Just purchased this bat on Monday evening and the bat broke today (Friday) just after 4 practices. After spending $400 on a bat, you would think it would last longer than 4 days. We are returning it for a Mako.

## "Do NOT Buy This Bat, It Will Break"
*by Dave Selig (parent)*

- **Cons:** Bat was purchased in mid March 2016. It is now end of March 2016 and bat is broken. Bat broke in handle, where it now rattles when you swing it. We now get to find out how quickly Louisville Slugger will honor their warranty and replace the bat. I'll also mention that a teammate of my son's purchased this same bat, and his broke as well.

## "916"
*by johnny baseball (coach)*

- **Cons:** the hand and barrel seperarte...this is our third one..not fun sending bats back every couple months.

## "Louisville Slugger 916 BBCOR"
*by Chris H (parent)*

- **Cons:** Two piece connection came loose after two days of BP and tee work. Price is ridiculous for such a poorly made bat.

## "Durability Issues"
*by Disappointed player (player)*

- **Cons:** First the grip came undone. I am a lefty and the grip is designed for a righty. Then about two weeks later the handle came loose.

## "Great but useless"
*by Rollie Sheriff (coach)*

- **Cons:** Bat broke after 3 games. Paid for shipping to return to manufacturer for replacement. It broke during BP. 3 more bats later(and yes, 3 more shipping charges) LS just gave me my original purchase money back. I ended up paying 65 dollars to rent a broken bat. Great while it lasts then worthless!!!

## "Not well built"
*by parent (parent)*

- **Cons:** Less then 30 days the grip is falling apart, and already signs of the barrel starting to turn. This could be a great bat, but they have some design flaws they need to work out. Does not appear the bat will make it through the spring season.

## "Caution "
*by Robbie Baseball (parent)*

- **Cons:** Knob is starting to come loose.

## "DUD "
*by Greg (parent)*

- **Cons:** We compared our bat to others on the team and it clear ours was not made correctly. Need to ship back to company and that is a pain

## "Design Flaw"
*by West Tex Dawg (parent)*

- **Cons:** As mentioned in other reviews, the adhesive holding the handle thru piece has come loose from the barrel after only 45 days of use. Pretty disappointed considering the 915 prime we bought last year is still in good shape. We are submitting a warranty claim but would purchase a Rawlings Velo if I had to purchase a new bat again

## "good bat, bad service"
*by 16 (player)*

- **Cons:** handle came loose and had to send it in to louisville. horrible customer service. supposed to take 7-10 days once they get the bat to see if i even get a new one. and to add on, they are on back order so i wont get a new bat until the middle of my season.

## "Prime 916 Faults"
*by Pete Binelas (parent)*

- **Cons:** Grip: Need to spend $11 on new grip as it tears for a left handed hitting player after 1 round of BP. Barrel and Handle has slight rotation or looseness after a few weeks. When swinging the bat would have a rotation or looseness feel on the handle. Heard from multiple sources and college teams that they have given up on the 916 and only use the 716 or 516. Sent back to LS and had to wait 3 weeks for replacement due to back orders. Assume due to similar issues I had.

## "ok??!!"
*by Mad Dawg (parent)*

- **Cons:** barrel came loose from handle. (a jiggle)got a replacement and the same thing happened.

## "Don't buy..."
*by Kyla Weaks (parent)*

- **Cons:** Did not last two weeks and have to send back for replacement! Not happy at all, after speding $400.

## "Poor Quality"
*by Amber Fiechtner (parent)*

- **Cons:** Will not last a year poor quality

## ""
*by DJTire*

- **Cons:** Louisville Slugger obviously has a design or manufacturing flaw with this bat. The first time in the cage with the bat my Son noticed that after about 50 hits, the barrel and handle twisted. If you call Louisville Slugger, they will tell you that this is how it is designed.

However, if you read other bat review sights, they say nothing about it, and even some have "experts" who say that if the bat twists there is something wrong with it. As you can read from other reviews, the twisting may be a sign of things to come. If your a gambler, purchase this bat, otherwise avoid it. How do you know if or when the 1/8" twist is going to become a full twist or a break?

## "not good"
*by bob (parent)*

- **Cons:** broke 2 in 2 weeks wont get another ! didnt buy them from justbats . com wish i did ! there costumer service rocks!!!

## "Breaks too easily not worth the money"
*by Christian (player)*

- **Cons:** It broke 3 times for me I'm on my fourth bat and I'm just trying to get a refund because the one i have now is broken too

## ""
*by Mr dingers*

- **Cons:** 3 other kids have the bat on my team but only my handle moves I don't know if it is broke or anything still works the same as before.

## "Poor design "
*by Craig (parent)*

- **Cons:** Purchased for 400 in Jan broke in April sent back for broken cap, chipped on the knob, wrap came off. Two weeks after receiving the replacement the handle came loose and the bat is dead. Probably a new design that went to market too fast. Hope the new model is better.

## "Bat is wast of money"
*by Louisville 916 flaw in bat (parent)*

- **Cons:** breaks every other game...if you want to replace a bat evey2 games this is the bat for you...$25 to ship eveytime it breaks should get partial refund or full refund for putting product out like this...would have more respect to own up to flaw in bat and refund move forward...

## "Louisville Prime 916 bbcor 32/29"
*by McGee (player)*

- **Cons:** My bats barrel became loose or wobbly from the handle which caused me to return it. I would've thought that a 400$ bat would be more durable...

## "player"
*by robert evans (player)*

- **Cons:** Handle starts moving and barrel starts rattling after 3 weeks no pop left in it .

## "WARNING!!!!!! "
*by johnny baseball (player)*

- **Cons:** Breaks constantly not worth returning every two weeks. These bats do not last the barrel twists from handle.

## "defective "
*by john12145bbh (player)*

- **Cons:** After about 3 weeks of using this bat the barrel had a wiggle when I shook it. I sent it bat to louisville and I'm getting another one. Hope it doesn't happen again.

## "?????"
*by brett jackson (other)*

- **Cons:** ends up breaking within a few weeks

## "Worst Bat - bad experience for a Varsity Player"
*by Marys65 (parent)*

- **Cons:** We bought this bat Feb/2016 returned to Just Bats because handle came loose on March/2016 , April 1st my son had the same problem with the bat, Now we have to go thru 2016 Louisville Slugger to get our money back. Horrible...

15.     In the face of mounting complaints and angry customers, each of whom paid approximately $400 each for the Bats, Defendants appear to have hatched a scheme to deny warranty claims and act as if the Defect was instead a noteworthy feature of the Bats.

16.     Nearly a year after the Bats were released, without any concomitant change to the manufacturing or construction of the Bats, Defendants changed the advertising language and invented an explanation out of whole cloth.  By May 3, 2016, the above-referenced advertising language was replaced with the following:

Description for 2016 Louisville Slugger Prime 916 BBCOR Baseball Bat
Maximum SPEED - Extreme POWER - Ultimate BALANCE : The Louisville Slugger Prime 916 BBCOR Baseball Bat: BBP9163 is here! With the introduction of their 2016 bat line, players around the nation are finding out why more Top 25 teams in NCAA baseball step into the box with a Louisville Slugger in their hands. Slugger made waves in the market with a never-before-seen 3-Piece bat construction, but the TRU3 Dynamic Socket Connection allows for slight movement between the barrel and handle to further maximize barrel trampoline effect and eliminate negative vibration. Combine that with the newly created FCS (Fused Carbon Structure) Composite and Flex Band Technology, the Prime 916 showcases the lightest swing weight and largest sweet spot in the 2016 Slugger lineup. This BBCOR certified model features the Flex Band Technology in its barrel. By inserting a 1" composite disc right below the sweet spot, the team in Louisville is able to meet BBCOR standards while keeping the barrel walls as thin as possible. Thinner barrel walls results in a lighter feel, larger sweet spot, and maximum trampoline effect on contact. Doesn't sound too bad, right? Louisville Slugger is more than confident that they've created the best bat in baseball and they're backing it up with the 30-Day Performance Promise. If you're not more confident in your swing in 30 days, send it back! Rounded out by a slick new graphic design and premium Lizard Skins grip tape, the Prime 916 combines comfort and style and is sure to help each hitter "Own The Plate"! The Louisville Slugger Prime 916 is backed by a Full Twelve (12) Month Manufacturer's Warranty. Free Shipping!

17.     A redline of the original advertising language created and disseminated by Defendants against the revised language lays bare the deceit perpetrated against unwitting consumers:

Description for 2016 Louisville Slugger Prime 916 BBCOR Baseball Bat

Maximum SPEED - Extreme POWER - Ultimate BALANCE : The Louisville Slugger Prime 916 BBCOR Baseball Bat: BBP9163 is here! With the introduction of their 2016 bat line, players around the nation are finding out why more Top 25 teams in NCAA baseball step into the box with a Louisville Slugger in their hands. Slugger made waves in the market with a never-before-seen 3-Piece bat construction, but the TRU3 ~~Explosive Power Transfer Technology in~~Dynamic Socket Connection allows for slight movement between the ~~Prime 916 amplifies those performance characteristics even~~barrel and handle to further ~~by drastically eliminating sting while allowing for maximum~~maximize barrel trampoline effect and ~~a true feel on contact~~eliminate negative vibration. Combine that with the newly created FCS (Fused Carbon Structure) Composite and Flex Band Technology, the Prime 916 showcases the lightest swing weight and largest sweet spot in the 2016 Slugger lineup. This BBCOR certified model features the Flex Band Technology in its barrel. By inserting a 1" composite disc right below the sweet spot, the team in Louisville is able to meet BBCOR standards while keeping the barrel walls as thin as possible. Thinner barrel walls results in a lighter feel, larger sweet spot, and maximum trampoline effect on contact. Doesn't sound too bad, right? Louisville Slugger is more than confident that they've created the best bat in baseball and they're backing it up with the 30-Day Performance Promise. If you're not more confident in your swing in 30 days, send it back! Rounded out by a slick new graphic design and premium Lizard Skins grip tape, the Prime 916 combines comfort and style and is sure to help each hitter "Own The Plate"! The Louisville Slugger Prime 916 is backed by a Full Twelve (12) Month Manufacturer's Warranty. Free Shipping!

18.     Having made no changes to the design or manufacturing process to create the Bats, Defendants utilized the revised advertising language as a basis to deny and dissuade valid warranty claims, like those of Plaintiff.

## CLASS ALLEGATIONS

19.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks certification of the following Class:

> All persons residing in the states of Florida, California, Illinois, Michigan, New Jersey and New York who purchased a Bat from April 1, 2015 through the present (the "State Class").

Additionally, with respect to the Magnuson-Moss Warranty Act claim, Plaintiffs propose the following class:

> All persons residing in the United States who have purchased a Bat from April 1, 2015, through the present (the "National Class").

Collectively, the State Class and National Class shall be referred to herein as the "Class" unless otherwise noted.

20.     Expressly excluded from the Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest, or which has a controlling interest in Defendants, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

21.     Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.  Defendants' national marketing and advertising campaigns target consumers across the country and Defendants represent that they have sold many millions of baseball bats.  The precise number of Class members and their

identities are unknown to Plaintiff at this time, but will be determined through discovery. Upon information and belief, Plaintiff believes that the Class numbers easily into the tens of thousands. Class members may be notified of the pendency of this action by mail and/or publication.

22.    This action involves questions of law and fact common to Plaintiffs and all members of the Class, resolution of which will resolve the issues for all Class members. These common issues include the following:

a)    Whether Defendants' Bats possess the Defect;

b)    Whether the Bats left Defendants' possession with the Defect.

c)    Whether Defendants' sales and marketing of the Bats was fraudulent and/or deceptive;

d)    Whether Defendants' conduct violated the consumer protection statutes of Illinois, Florida, New York, New Jersey, California, or Michigan; and

e)    Whether Plaintiff and Class members sustained damages resulting from Defendants' conduct and, if so, the proper measure of damages, restitution, equitable, or other relief.

23.    Plaintiff understands and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to, or which directly conflict with, the interests of the other members of the Class.

24.    Plaintiff has engaged the services of counsel who are experienced in complex class litigation, who will adequately prosecute this action, and who will assert and protect the rights of and otherwise represent Plaintiff and the absent Class members.

25.     Plaintiff's claims are typical of those of the absent Class members because Plaintiff and the Class members each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein.

26.     This action is brought under Rule 23 because Defendants have acted, or refused to act, on grounds generally applicable to all members of the Class and/or because questions of law or fact common to Class members predominate over any questions affecting only individual members.

27.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations.

28.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude maintenance as a class action.

**COUNT I**
**VIOLATION OF CONSUMER PROTECTION STATUTES OF FLORIDA, CALIFORNIA, ILLINOIS, MICHIGAN, NEW JERSEY AND NEW YORK**
**(On Behalf of the State Class)**

29.     Plaintiff re-alleges and incorporate paragraphs 1 through 28 as if expressly set forth herein.

30.     This count is against Defendants for violation of the consumer protection laws of Florida, California, Illinois, Michigan, New Jersey and New York.

31.     Defendants misrepresented that the Bats were of merchantable quality when they, in fact, possessed an inherent Defect.  Additionally, Defendants omitted a material piece of information, namely, that the Bats possess the Defect.  Finally, when confronted with warranty claims Defendants systematically misled Plaintiff and the proposed Class.  Each of the foregoing

constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as prohibited by:

      a)   Florida Deceptive and Unfair Trade Practices Act § 501.201, *et seq.*;

      b)   California Business & Professional Code § 17200 *et seq.*;

      c)   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*;

      d)   Michigan Consumer Protection Act, Mich. Comp. Law § 445.901 *et seq.*;

      e)   New Jersey Consumer Protection Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and

      f)   New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*

33.    Defendants violated each of the consumer protection statutes listed above, by using deceptive trade practices in conjunction with the promotion, sale and provision of warranty service for the Bats. Plaintiff purchased the Bat because of Defendants' misrepresentations and omissions concerning the Bat.

34.    Because the Bats are defective and do not function as advertised or warranted, Defendants caused Plaintiff's injuries, which are quantifiable based on the premium charged for Defendants' Bats, had the true facts about the Bat been disclosed, Plaintiff would not have purchased it.

35.    On behalf of himself, and on behalf of all Class members and the public at large, Plaintiff seeks actual damages, and seeks injunctive relief preventing Defendants from further unfair trade practices.

36.    As a result of the foregoing, Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendants for any and all actual and statutory damages, together with interest both prejudgment and post judgment, costs and attorney's fees and all such

other and further relief as the Court may deem just and proper, and demands trial by jury on all issues triable at law by jury.

37.     Further, Plaintiff, on behalf of himself and all others similarly situated, requests an order from this Court enjoining Defendants from continuing their deceptive marketing and promotion of the Bats.

## COUNT II
### BREACH OF STATE WARRANTY LAW
### (On Behalf of the State Class)

38.     Plaintiff re-alleges and incorporates paragraphs 1 through 28 as if expressly set forth herein.

39.     Plaintiff brings this claim individually and on behalf of the State Class.

40.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other Class members purchased the Bats.  The terms of that contract include the promises and affirmations of fact made by Defendants in the Bats' packaging and through marketing and advertising, as described above.  This marketing and advertising constitute express warranties and became part of the basis of the bargain, and part of the standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other hand.

41.     Defendants' promises create express warranties that the Bats have the characteristics they are purported to have in the advertising, marketing materials and packaging. Defendants breached those express warranties by failing to deliver a Bat free from Defects.

42.     All conditions precedent to Defendants' liability under this contract were performed by Plaintiff and the Class when they purchased the Bats and used them as directed.

43.     Second, Defendants violated the terms of their warranty by failing to replace Plaintiff's defective Bat with a Bat free from Defects, asserting that the twisting of the handle independent of the barrel was deliberate, and its express warranties fail of their essential purpose. Plaintiff's repeated efforts (independently and through counsel) to get Defendants to honor the terms of their warranty failed.

44.     Defendants also violated implied warranties of fitness for a particular purpose and merchantability by providing Bats that do not conform to basic minimum standards.  The Bats, which were possessed the Defect when they left Defendants' possession are not fit for the ordinary purpose of hitting baseballs and do not conform to the promises and affirmations made on their labels and packaging.  They are therefore not of merchantable quality.   The Bats are also unfit for their particular purpose, namely amplifying a baseball player's performance by eliminating sting, maximizing trampoline effect, and creating a larger sweet spot.  Plaintiff relied on Defendants' skill and judgment when he selected the Bat for these purposes.

45.     Plaintiff relied on Defendants' express and implied warranties regarding the qualities and benefits of the Bats.  Unfortunately, as set forth herein, the Bats did not conform to the affirmations and promises made by Defendants.

46.     As a result of Defendants' breach of warranty, Plaintiff and the Class were harmed in an amount to be determined.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of the State Class)

47.     Plaintiff incorporates the allegations of paragraphs 1 through 28, as though fully set forth herein.

48.     As a direct and proximate result of the misconduct set forth above, Defendants have been unjustly enriched.

49.     Through deliberate misrepresentations or omissions made in connection with the advertising, marketing, promotion, and sale of the Bats during the Class Period, Defendants reaped benefits, which resulted in their wrongful receipt of profits.  Accordingly, Defendants will be unjustly enriched unless ordered to disgorge those profits for the benefit of Plaintiff and the Class.

**COUNT IV**
**BREACH OF MAGNUSON-MOSS WARRANTY ACT**
**(On Behalf of the National Class)**

50.     Plaintiff incorporate the allegations of paragraphs 1 through 28, as though fully set forth herein.

51.     Plaintiff and members of the Class each purchased Bats.

52.     Plaintiff and the Class are "consumers" as defined under 15 U.S.C. § 2301(3) of the Magnuson-Moss Warranty Act ("MMWA") because they are buyers of a consumer product, the Bats.

53.     Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) and (5) because they are engaged in the business of making consumer products directly and indirectly available to customers, and because Defendants give a written warranty and/or are obligated under an implied warranty.

54.     The Bats at issue are a "consumer product" as defined by 15 U.S.C. § 2301(1) because they are pieces of tangible personal property which are distributed in commerce and which are normally used for personal, family, or household purposes.  The Bats easily meet the minimum cost requirement under the MMWA because they have a retail price of approximately

19

$400.00 each.

55.     One or more of the warranties given to Plaintiff by Defendants via the product packaging, the Internet, and official product marketing, constitute a "written warranty" as defined by 15 U.S.C. § 2301(6).

56.     Plaintiff is entitled to bring this action pursuant to 15 U.S.C. § 2310(d)(1).

57.     Defendants represent and warrant that if the Bats are defective they will be replaced, but when Plaintiff and members of the Class attempted to get Defendants to honor their warranty their claims were denied and they were told that the Defect was normal.  It is decidedly not normal.

58.     Defendants also provided implied warranties of fitness for a particular purpose and merchantability.  Defendants failed to meet these basic elements of the implied warranties.

59.     Plaintiff provided Defendants with notice that the Bats at issue do not conform to the standards represented and warranted to consumers.  Defendants had a reasonable opportunity to correct the problem, but chose not to take proper corrective action, and, indeed, ignored Plaintiff's demand letter.

60.     Defendants have been unwilling to correct their false statements, omissions and warranty violations and make restitution or to reimburse Plaintiff and the Class.

61.     Plaintiff and the Class have suffered damages as a direct and proximate result of Defendants' breaches of warranty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

A.     An order certifying the nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Class members;

B.     An order declaring that the acts and practices of Defendants violate:

    i.     Florida Deceptive and Unfair Trade Practices Act § 501.201, *et seq.*;

    ii.    California Business & Professional Code § 17200 *et seq.*;

    iii.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*;

    iv.    Michigan Consumer Protection Act, Mich. Comp. Law § 445.901 *et seq.*;

    v.     New Jersey Consumer Protection Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and

    vi.    New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*

C.     For damages pursuant to all applicable laws in an amount to be determined at trial, including interest;

D.     For restitution of monies wrongfully obtained and/or disgorgement of ill-gotten revenues and/or profits;

E.     A permanent injunction enjoining Defendants from continuing to harm Plaintiff and the members of the Class and continuing to violate the law referenced herein;

F.     An order requiring Defendants to adopt and enforce a policy that requires appropriate removal of misleading claims, which complies with law;

G.     Reasonable attorneys' fees and the costs of the suit; and

H.     Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

Dated:  January 23, 2017                              CUNEO GILBERT & LaDUCA, LLP

                                        By:     /s/ Michael J. Flannery
                                                Michael J. Flannery
                                                (N.D. I.L. Bar No. 52714)
                                                CUNEO GILBERT & LaDUCA, LLP
                                                7733 Forsyth Boulevard
                                                Suite 1675
                                                St. Louis, MO  63105
                                                Tel:  (314) 226-1015
                                                Fax:  (202) 789-1813
                                                Email:  mflannery@cuneolaw.com

                                                Charles J. LaDuca
                                                (To Apply Pro Hac Vice)
                                                William H. Anderson
                                                (To Apply Pro Hac Vice)
                                                CUNEO GILBERT & LaDUCA, LLP
                                                4725 Wisconsin Avenue, NW
                                                Washington, DC 20016
                                                Tel:  (202) 789-3960
                                                Fax:  (202) 789-1813
                                                Email:  charlesl@cuneolaw.com
                                                        wanderson@cuneolaw.com

                                                Jon Herskowitz
                                                (To Apply Pro Hac Vice)
                                                BARON & HERKOWITZ
                                                9100 S. Dadeland Blvd.
                                                Suite 1704
                                                Miami, FL 33156
                                                Tel:  (305) 670-0101
                                                Fax:  (305) 670-2393
                                                Email:  jon@bhfloridalaw.com