UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE ALEA, individually and on behalf of all others similarly situated, | )<br>)<br>) 17 C 498 |
| Plaintiff, | )<br>) Judge Gary Feinerman |
| vs. | )<br>) |
| WILSON SPORTING GOODS COMPANY, | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

George Alea, on behalf of himself and a putative class, alleges that Wilson Sporting Goods Company marketed, sold, and refused to honor its warranty on a defective baseball bat in violation of state law and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*. Doc. 20. Wilson moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss some of Alea's individual claims and under Rule 12(f) to strike his class allegations. Doc. 22. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Alea's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Alea as those materials allow. *See Pierce v. Zoetis*, *Inc.*, 818

1

F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at this stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

In March 2015, Wilson purchased the rights to the Louisville Slugger brand, with certain exceptions not relevant here. Doc. 20 at ¶ 10. Approximately a year later, after reviewing Wilson's online marketing materials, Alea bought a 2016 Louisville Slugger Prime 916 BBP9163 BBCOR baseball bat (the "Prime 916") for his son. *Id*. at ¶ 9. The marketing materials did not mention that the Prime 916's handle would rotate independently of the barrel, and Alea would not have purchased the bat had he known that the bat would behave in that particular way. *Ibid*. Shortly after Alea purchased the Prime 916, his son noticed that the barrel and the handle moved independently when he hit a ball. *Ibid*. Alea tried the Prime 916 and noticed the same thing. *Ibid*. The movement appeared to weaken the bat's power, and Alea's son stopped using the bat because it felt "dead." *Ibid*. Alea contacted Wilson, but was told that the movement was normal and that the warranty would not cover a replacement. *Ibid*.

From June 2015 to April 2016, Wilson distributed the following promotional statement about the Prime 916:

> Maximum SPEED - Extreme POWER - Ultimate BALANCE: The Louisville Slugger Prime 916 BBCOR Baseball Bat: BBP9163 is here! With the introduction of their 2016 bat line, players around the nation are finding out why more Top 25 teams in NCAA baseball step into the box with a Louisville Slugger in their hands. Slugger made waves in the market with a never-before-seen 3-Piece bat construction, but the TRU3 Explosive Power Transfer Technology in the Prime 916 amplifies those performance characteristics even further by drastically eliminating sting while allowing for maximum trampoline effect and a true feel on contact. Combine that with the newly created FCS (Fused Carbon Structure) Composite and Flex Band Technology, the Prime 916 showcases the lightest swing weight and largest sweet spot in the 2016 Slugger lineup. This BBCOR certified model features the Flex Band Technology in its barrel. By inserting a 1" composite disc right below the sweet spot, the team in Louisville is able to meet BBCOR standards while

2

> keeping the barrel walls as thin as possible. Thinner barrel walls results in a lighter feel, larger sweet spot, and maximum trampoline effect on contact. Doesn't sound too bad, right? Louisville Slugger is more than confident that they've created the best bat in baseball and they're backing it up with the 30-Day Performance Promise. If you're not more confident in your swing in 30 days, send it back! Rounded out by a slick new graphic design and premium Lizard Skins grip tape, the Prime 916 combines comfort and style and is sure to help each hitter "Own The Plate"! The Louisville Slugger Prime 916 is backed by a Full Twelve (12) Month Manufacturer's Warranty. Free Shipping!

*Id*. at ¶ 11. This statement does not mention the Prime 916's barrel and handle rotating independently. *Id*. at ¶ 12. Numerous consumers complained about the barrel and handle coming apart. *Id*. at ¶ 13.

The Prime 916's one-year express warranty, which Wilson referenced in its marketing materials, *id*. at ¶ 11, warranted that the bat was free from "manufacturer's defects." *Id*. at ¶ 14. Set forth on the manufacturer's website, *id*. at ¶ 14 n.2, the warranty read in pertinent part: "Louisville Slugger is proud to continue offering an industry-best one year limited bat warranty (may vary outside the U.S.)." "Bat Warranty," http://www.slugger.com/en-us/warranty-bat (visited July 31, 2017). The warranty then provided a form for customers to complete if they wished to return a defective non-wood bat; the form included a field entitled, "Where Did You Buy the Product?" *Ibid*.

About one year after the Prime 916 was first offered for sale, and without any alteration in the bat's construction, Wilson changed the above-referenced marketing language to this:

> Maximum SPEED - Extreme POWER - Ultimate BALANCE: The Louisville Slugger Prime 916 BBCOR Baseball Bat: BBP9163 is here! With the introduction of their 2016 bat line, players around the nation are finding out why more Top 25 teams in NCAA baseball step into the box with a Louisville Slugger in their hands. Slugger made waves in the market with a never-before-seen 3-Piece bat construction, but *the TRU3 Dynamic Socket Connection allows for slight movement between the barrel and handle to further maximize barrel trampoline effect and eliminate negative vibration*. Combine that with the newly created FCS (Fused Carbon Structure) Composite and Flex Band Technology, the Prime 916 showcases the lightest

3

> swing weight and largest sweet spot in the 2016 Slugger lineup. This BBCOR certified model features the Flex Band Technology in its barrel. By inserting a 1" composite disc right below the sweet spot, the team in Louisville is able to meet BBCOR standards while keeping the barrel walls as thin as possible. Thinner barrel walls results in a lighter feel, larger sweet spot, and maximum trampoline effect on contact. Doesn't sound too bad, right? Louisville Slugger is more than confident that they've created the best bat in baseball and they're backing it up with the 30-Day Performance Promise. If you're not more confident in your swing in 30 days, send it back! Rounded out by a slick new graphic design and premium Lizard Skins grip tape, the Prime 916 combines comfort and style and is sure to help each hitter "Own The Plate"! The Louisville Slugger Prime 916 is backed by a Full Twelve (12) Month Manufacturer's Warranty. Free Shipping!

Doc. 20 at ¶ 16 (emphasis added). Alea contends that the change in the marketing language—adding "the TRU3 Dynamic Socket Connection allows for slight movement between the barrel and handle to further maximize barrel trampoline effect and eliminate negative vibration"—was a ploy by Wilson to pass off a defect as an intentional design element. *Id*. at ¶ 18.

In his amended complaint, Alea brings individual claims under state consumer protection law (Count I), state warranty law (Count II), state unjust enrichment law (Count III), and the MMWA (Count IV). *Id*. at ¶¶ 29-59. Alea also seeks to represent two classes. The "State Class," which seeks relief under state law in Counts I-III, consists of "[a]ll persons residing in the states of Florida, California, Illinois, Michigan, New Jersey, New York, Massachusetts, Minnesota, Missouri and Washington, who purchased a Bat from April 1, 2015 through the present." *Id*. at ¶ 19. The "National Class," which seeks relief under the MMWA in Count IV, consists of "[a]ll persons residing in the United States who have purchased a Bat from April 1, 2015, through the present." *Ibid*. The essence of all claims is the same: Wilson warranted the Prime 916 bats as free of defects but the bats were in fact defective, and, when pressed, Wilson did not honor the warranty but instead attempted to pass off the defect as an intended element of the bat's design.

**Discussion**

Wilson seeks dismissal of Alea's individual warranty and unjust enrichment claims—but not his individual state consumer fraud and MMWA claims—and also argues that the class allegations should be stricken because the state law and MMWA claims are inappropriate for class treatment. Wilson's motion hints at other potential grounds for dismissal, such as a potential failure to comply with Rule 9(b) and a failure to allege facts sufficient to show reliance, Doc. 21-1 at 3, but he cites no supporting authority and does not develop those arguments, so they are forfeited. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation and internal quotation marks omitted).

**I.    Governing Law**

The court has jurisdiction over Alea's individual state law claims under 28 U.S.C. § 1332(a). Doc. 20 at ¶¶ 9-10. Wilson argues that Florida law governs those claims, Doc. 22-1 at 6-7, while Alea counters that a choice-of-law analysis is premature, Doc. 25 at 4. Alea is wrong, for to decide whether his individual warranty and unjust enrichment claims fail, the first step is to ascertain the governing law.

Because this case was filed in Illinois, Illinois choice-of-law rules guide the analysis. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law."). "Illinois has adopted the approach found in the Second Restatement of Conflict of Laws." *Barbara's Sales, Inc. v. Intel Corp.*, 879

N.E.2d 910, 919 (Ill. 2007). Under the Second Restatement, the law of the State that "has the most significant relationship to the occurrence and the parties" applies. *Restatement (Second) of Conflict of Laws* § 145(1) (1971); *see also Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009) (observing that "most states, including Illinois, nowadays apply the law of the state that has the 'most significant relationship' to the claim"). In tort cases, the "most significant relationship" analysis turns on: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Restatement (Second) of Conflict of Laws* § 145(2); *see also Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007) (same). "Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (quoting *Esser v. McIntyre*, 661 N.E.2d 1139, 1141 (Ill. 1996)). As the Seventh Circuit has explained: "[I]n the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is—the place where the tort occurred. … Victim location and injurer location are valid considerations. But when they point to two different jurisdictions they cancel out, leaving the place where the injury (and hence the tort) occurred as the presumptive source of the law governing the accident." *Abad v. Bayer Corp.*, 563 F.3d 663, 669-70 (7th Cir. 2009) (citation and internal quotation marks omitted).

Florida has the most significant relationship to Alea's individual claims. The first and most important consideration, where the injury occurred, favors Florida law. Alea resides in Miami, Florida. Doc. 20 at ¶ 9. The complaint does not allege that Alea read the marketing materials, purchased the Prime 916, or used it outside of Florida; indeed, the complaint alleges

6

that he purchased the bat for his son to use at high school and recreational baseball games. *Ibid*. While it is possible that his son used the Prime 916 elsewhere, no allegation suggests this, and the most reasonable inference is that the bat's primary (if not exclusive) use was in Florida.

The second, third, and fourth considerations are less important than the first, and in any event do not counsel strongly for or against applying the law of Florida or, say, Illinois. The conduct causing the injury is Wilson's dissemination of the marketing language and its refusal to honor the warranty. These might be said to have occurred in Illinois (where Wilson's headquarters is located, *id*. at ¶ 10). But the complaint does not offer any allegations about where the materials were drafted or the warranty decisions were made, and because the marketing materials and warranty language were disseminated at least broadly enough to be viewed in Florida, their creation and dissemination, as well as the refusal to honor the warranty, bears no strong connection to any particular location. The third factor, the parties' location, does not point strongly in either direction, as Alea is located in Florida and Wilson is headquartered in Illinois. The fourth factor, the place where the parties' relationship was centered, favors Florida, because the relationship was forged there.

In sum, the governing factors strongly favor applying Florida law to Alea's individual claims.

## II.  Alea's Individual State Law Warranty Claim (Count II)

Wilson seeks dismissal of Alea's state law warranty claims on the ground that he has failed to allege privity between himself and Wilson. Doc. 22-1 at 6-8. The implied warranty claim will be addressed first, then the express warranty claim.

With limited exceptions inapplicable here, an implied warranty claim under Florida law requires privity between the plaintiff and the defendant. *See Kramer v. Piper Aircraft Corp.*, 520

7

So.2d 37, 39 (Fla. 1988) ("We agree … that this court in *West* [*v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla. 1976),] abolished the no-privity, breach of implied warranty cause of action … ."); *Hinkle v. Cont'l Motors, Inc.*, 2017 WL 3131465, at *4 (M.D. Fla. July 24, 2017) ("[I]t is undisputed that Florida law does not provide for a no-privity breach of implied warranty cause of action."); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1342 (S.D. Fla. 2009) (collecting cases and noting that "[i]t is now well-settled that, barring certain exceptions, under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity") (citation, internal quotation marks, and brackets omitted). Because Alea does not allege that he purchased the bat directly from Wilson, his implied warranty claim fails. *See Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (dismissing a breach of implied warranty claim under Florida law because the plaintiff "failed to allege that she purchased the [product] directly from the Defendants, but rather, specifically alleged that she purchased the [product] from a third-party retailer"); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) ("A plaintiff who purchases a product but does not buy it directly from the defendant, is not in privity with the defendant.").

The law of express warranty is murkier. *T.W.M.* holds that "to recover for the breach of a warranty, either express *or* implied, the plaintiff must be in privity of contract with the defendant." *Ibid*. (emphasis added); *see also*, *e.g.*, *Mazzeo v. Nature's Bounty, Inc.*, 2014 WL 5846735, at *2 (S.D. Fla. Nov. 12, 2014) (same and collecting cases); *Hill*, 899 F. Supp. 2d at 1267 (same). As *Smith* observed, however, numerous state and federal decisions in Florida permit express warranty claims absent privity. 663 F. Supp. 2d at 1342 (collecting cases). *Smith* itself permitted an express warranty claim to proceed without privity, and several later decisions have done so as well. *See Decerbo v. Melitta USA, Inc.*, 2016 WL 7206244, at *6 (M.D. Fla.

Oct. 17, 2016); *Bohlke v. Shearer's Food, LLC*, 2015 WL 249418, at *11 (S.D. Fla. Jan. 20, 2015); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1388-89 (S.D. Fla. 2014).

The court finds *Smith* persuasive to the extent it holds that privity is not required under Florida express warranty law where, as here, the "end-purchaser" is unlikely to "expect the seller or 'middle man' to have relevant knowledge, or even expertise, regarding the manufacturer's product." 663 F. Supp. 2d at 1343. As in *Smith*, there is no reason to think (with all reasonable inferences drawn in his favor) that Alea expected the retailer—whether online or physical—that sold him the Prime 916 would provide him with detailed information about the bat's likely performance, including any manufacturing defects or other limitations. *Ibid*. (explaining that "[i]t defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with the scientific properties of" the gum's active ingredient); *Karhu v. Vital Pharm., Inc.*, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013) ("Here, the product in question is a dietary supplement sold online. There are no facts in the pleadings that indicate that Plaintiff could expect to receive relevant scientific information about Meltdown's ingredients from the retailer."). Consequently, this case is distinguishable from *T.W.M.*, which concerned a surgically implanted medical device. 886 F. Supp. at 844. Unlike Alea, the plaintiff in *T.W.M.* could "reasonably rely on a learned intermediary—his doctor—to give him relevant information regarding the product and its warranties." *Karhu*, 2013 WL 4047016, at *6; *see also Smith*, 663 F. Supp. 2d at 1343; *Bohlke*, 2015 WL 249418, at *11 (applying the reasoning of *Smith* in a case involving the retail sale of certain packaged consumer foods); *Garcia*, 43 F. Supp. 3d at 1389 (same).

Moreover, the warranty here was reflected in Wilson's advertisements and easily accessible on its websites, and thus was "clearly directed toward the end-purchaser." *Karhu*,

9

2013 WL 4047016 at *6. As noted, the complaint alleges that Alea purchased the Prime 916 "after reviewing marketing materials online." Doc. 20 at ¶ 9. Those marketing materials state that "[t]he Louisville Slugger Prime 916 is backed by a Full Twelve (12) Month Manufacturer's Warranty." *Id*. at ¶ 11. These allegations yield the reasonable inference that Alea viewed Wilson's express warranty and then purchased the bat. Accordingly, given Alea's allegation that he "relied on [Wilson's] express warranties regarding the qualities and benefits of the Bats," Doc. 20 at ¶ 44, applying the privity requirement to his express warranty claim would be inappropriate. *See Decerbo*, 2016 WL 7206244, at *6. After all, Wilson communicated the terms of the warranty directly to Alea through the link provided on Louisville Slugger's website. *See ibid*. (reasoning that "common sense dictates that an express warranty can be created between a manufacturer and purchaser, despite the fact that the parties' transaction flowed through a third-party intermediary," where the plaintiff "relie[d] on representations made on the [manufacturer's] packaging" in deciding to purchase the product); *Smith*, 663 F. Supp. 2d at 1343 (concluding that it was "significant that the express warranty the manufacturer allegedly breached is contained on the packaging of Eclipse gum," given that the plaintiff alleged that he "relied on the warranty when purchasing the gum"); *see also Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017) ("Florida courts have found the privity requirement to be satisfied when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party."). The express warranty claim thus survives dismissal.

III.    **Alea's State Law Unjust Enrichment Claim (Count III)**

Wilson contends that Alea's decision to bring claims at law—in particular, his warranty and MMWA claims—requires dismissal of his unjust enrichment claim, which lies in equity.

10

Doc. 22-1 at 10-11 (citing *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341-42 (S.D. Fla. 2011)). Wilson's argument is premature:

> [T]he general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available. However, this doctrine does not apply to claims for unjust enrichment. It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature.

*Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. App. 1998).

Although Alea has *pleaded* the existence of an express contract, he has not yet *proven* its existence. And it is possible to imagine circumstances where Alea could not prove the existence of a contract, but where he could nonetheless demonstrate that Wilson has unjustly retained a benefit conferred upon it by him in inequitable circumstances, which would prove an unjust enrichment claim under Florida law. *See Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004) (setting forth the elements of an unjust enrichment claim). Accordingly, at this early stage of the case, Alea may pursue both a warranty claim and an unjust enrichment claim. *See Hayes v. Moon*, 2017 WL 2547205, at *4 (S.D. Fla. June 13, 2017) ("Florida Courts of Appeal discussing alternative pleadings have emphasized that until an express enforceable contract is proven the equitable claim of unjust enrichment is not barred."); *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (relying on *Williams* in concluding that "[i]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails. Until an express contract is proven, a motion to dismiss a claim for unjust enrichment" on the ground that a contract between the parties exists "is premature"); *see also Green Lumens LLC v. Green Lumens NE LLC*, 2016 WL 8808767, at *4 (S.D. Fla. Aug. 25, 2016) (denying a motion to dismiss and reasoning, based on *Williams*, that where the plaintiff "plead[ed] the unjust

enrichment claim *in the alternative*, … the unjust enrichment claim does not have to be dismissed unless and until Defendants' oral contract is deemed legally enforceable"); *Hirsh v. Silversea Cruises Ltd.*, 2015 WL 12780626, at *9 (S.D. Fla. Mar. 5, 2015) ("In the absence of proof that an express contract exists between the parties, dismissal of Plaintiffs' unjust enrichment claim would be premature."); *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *7-8 (S.D. Fla. Nov. 14, 2014) (same, citing additional cases).

## IV. Class Allegations

### A. State Class Claims

Wilson seeks to dismiss the State Class allegations on two grounds. First, it contends that Alea lacks "standing" to bring non-Florida law claims. Doc. 22-1 at 11-12. Second, it argues that given the differences among state consumer protection, warranty, and unjust enrichment law, class treatment is facially inappropriate. *Id*. at 12-13. Neither argument persuades.

The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation and internal quotation marks omitted). Here, Alea alleges that he purchased a defective product (injury), that Wilson's design flaw and failure to honor a warranty caused financial injury (causation), and that he should be compensated with money (redressability). "Nothing more is required for standing." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (where the plaintiffs alleged "that they [were] victims of a pyramid scheme that saddled them with financial loss, which YTB caused," holding that "[t]he judiciary [could] redress that injury by ordering YTB to pay money to the victims").

Wilson's challenge to Alea's standing does not address any of the components of standing, but instead rests on the premise that he does not have a viable claim under the consumer laws of States other than Florida. That premise may be right, but it goes to the merits, not standing, which is an essential distinction:

> Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is *entitled to relief*. … When deciding question of standing, courts must look to the case as a whole, rather than picking apart its various components to separate the claims for which the plaintiff will be entitled to relief from those for which he will not. If the court becomes too enmeshed in the plaintiff's entitlement to relief, it will stray beyond the standing inquiry into the merits.

*Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). A plaintiff's reliance upon inapplicable law is a good reason to dismiss a claim under Rule 12(b)(6) on the merits, but not to dismiss for lack of standing. *See Morrison*, 649 F.3d 536 (explaining that, "[i]f the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified"); *Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1086 (N.D. Ill. 2011) (applying *Morrison* and concluding that "whether a resident of a state other than Illinois can sue under [the Illinois Consumer Fraud and Deceptive Business Practices Act] is a merits question, not a jurisdictional standing question"). Moreover, the Seventh Circuit has cautioned that when a plaintiff brings a putative class action and the defendant argues that the plaintiff lacks "standing" to represent members of the putative class, the court must be "mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing" given that "class certification issues are logically antecedent to Article III concerns." *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).

Wilson's second argument fails as well. Citing *In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002), and *In re Aqua Dots Product Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), Wilson contends that variation among state consumer protection, unjust enrichment, and warranty law makes class treatment unmanageable. Doc. 22-1 at 12-14. *Bridgestone* and *Aqua Dots* caution strongly against certifying a class such as the one pleaded here, as does *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001). However, those cases were decided on appeals under Rule 23(f) from orders, made on a developed record, certifying or refusing to certify a class. *See Aqua Dots*, 654 F.3d at 750; *Bridgestone*, 288 F.3d at 1015-16; *Szabo*, 249 F.3d at 674. Here, by contrast, the case is at the pleading stage.

True enough, the text of Rule 23(c)(1)(A)—"At an early practicable time after a person sues … as a class representative, the court must determine by order whether to certify the action as a class action."—plainly indicates that the court may reject a plaintiff's attempt to represent a class as soon as it becomes obvious that he will be unable to satisfy Rule 23. In limited circumstances, that time can arise at the pleading stage. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829-30 (N.D. Ill. 2013). Those circumstances are not present here. Although *Aqua Dots*, *Bridgestone*, and *Szabo* strongly caution against certifying multistate consumer protection or warranty claims, Seventh Circuit precedent teaches that such certifications are not categorically prohibited. *See Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (noting, in a state law warranty and consumer fraud case, that *Bridgestone* "did not mean that nationwide classes are impermissible as a matter of law").

In *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010), for example, the Seventh Circuit affirmed the district court's certification of multistate classes seeking recovery under

14

state consumer protection law.  In so doing, the court acknowledged *Bridgestone* and similar cases, but held that "those cases did not opine that class certification was *never* appropriate in consumer fraud cases, only that it was inappropriate in the circumstances before [the court]." *Id.* at 393; *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 754-61 (7th Cir. 2014) (vacating the district court's refusal to certify a multistate consumer fraud class).  The class certification analysis is necessarily contextual, and the context—including whether and how to create subclasses—is in this instance better explored under Rule 23, on a more developed record, than under Rule 12(f).  *See Pella Corp.*, 606 F.3d at 396.

For these reasons, Wilson's motion to strike the State Class allegations is denied, without prejudice of course to Wilson raising its arguments in opposition to any Rule 23 motion filed by Alea or at some other appropriate juncture.

      **B.**      **National Class Claims**

The putative National Class seeks relief under the MMWA.  The MMWA permits a suit for breach of "'warranty arising under State law … .'"  *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (quoting 15 U.S.C. § 2301(7)).  "Because [the MMWA] do[es] not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the [MMWA] therefore hinges entirely on the applicable state law."  *Ibid.*

As shown above, Alea's Florida law implied warranty claim fails for lack of privity, so his MMWA implied warranty claim fails on the same ground.  *See Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. App. 2005); *see also In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016).  And because Alea has no MMWA implied warranty claim, he cannot represent an MMWA implied warranty class.  *See Pruitt v. City of Chicago*, 472

F.3d 925, 926 (7th Cir. 2006) (reasoning that a plaintiff who loses on the merits cannot satisfy adequacy under Rule 23(a)(4)); *Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 957 (7th Cir. 1998) (same). By the same token, because Alea has a viable Florida law express warranty claim, he also has a viable MMWA express warranty claim, and therefore is an appropriate representative for an MMWA express warranty class. *See* Dee Pridgen and Richard M. Alderman, *Consumer Protection and the Law*, at § 14:6 (2016) ("[W]here the manufacturer issues a written warranty on a consumer product, there is no privity requirement for the consumer to bring suit to enforce that warranty under Magnuson-Moss."); *Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc.*, 2009 WL 3147315, at *3 (N.D. Ill. Sept. 28, 2009) (same).

Wilson's argument that the MMWA class allegations may be stricken on the pleadings fails for the reasons set forth above. *See Martin*, 818 F.3d at 308; *Suchanek*, 764 F.3d at 754-61; *Pella Corp.*, 606 F.3d at 393.

**Conclusion**

Wilson's motion to dismiss and strike is granted in part and denied in part. Alea's implied warranty claims under Florida law and the MMWA are dismissed without prejudice. In all other respects, Wilson's motion is denied. If Alea would like to replead the dismissed claims, he must file a second amended complaint by November 21, 2017. If Alea does not amend his complaint, Wilson shall answer the surviving portions of the amended complaint by November 29, 2017. If Alea amends his complaint, Wilson shall answer the non-amended claims, and answer or otherwise plead to the amended claims, by December 6, 2017.

November 7, 2017      _____

                                                                  United States District Judge