# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GEORGE ALEA and CURTIS HAMBURG, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

WILSON SPORTING GOODS CO.

Defendant.

Case No. 1:17-cv-00498

Honorable Gary Feinerman

Magistrate, Honorable Mary M. Rowland

---

# PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, AND RELATED RELIEF

---

757969.1

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

SUMMARY OF THE PROPOSED CLASS SETTLEMENT ..................................... 5

ARGUMENT ................................................................................................................... 8

I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE. ........................ 8

   A.  This Case Satisfies All Rule 23(a) Prerequisites For Class Certification. .......................... 9

     1.  The Settlement Class Is Sufficiently Numerous. ........................................................ 9

     2.  Common Questions Of Law And Fact Affect All Settlement Class Members................ 9

     3.  The Representative Plaintiffs' Claims Are Typical Of Those Held By The Settlement Class.................................................................................................................................. 10

     4.  Plaintiffs And Class Counsel Have Adequately Protected The Settlement Class.......... 11

   B.  The Proposed Settlement Class May Be Maintained Under Rule 23(b)(3)....................... 12

     1.  Common Questions Predominate In This Case. .......................................................... 12

     2.  A Class Action Is A Superior Method For Adjudication Of This Controversy............ 13

II.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL. ........... 14

   A.  Class Settlements Are Favored. ...................................................................................... 14

   B.  The Guidelines For Preliminary Approval Of Class Settlements..................................... 15

   C.  The Settlement Agreement Satisfies The Criteria For Preliminary Approval.................. 16

     1.  The Proposed Settlement Agreement Achieves Substantial And Concrete Benefits For The Settlement Class Relative To The Uncertain Outcome Of Continued Litigation. ......... 16

     2.  Absent A Settlement, Intense And Costly Litigation May Have Likely Continued For Years. .................................................................................................................................. 18

     3.  No Known Opposition To The Settlement Exists At This Stage.................................. 19

     4.  The Proposed Class Counsel Has Provided Competent And Knowledgeable Guidance In This Case. ...................................................................................................................... 19

       a.  William Anderson of Handley Farah & Anderson PLLC .......................................... 20

       b.  Katrina Carroll of Lite DePalma Greenberg, LLC ................................................... 22

       c.  Jon Herskowitz of Baron & Herskowitz.................................................................. 25

       d.  Charles LaDuca of Cuneo Gilbert & LaDuca, LLP ................................................. 28

     5.  The Stage Of The Proceedings And Discovery Produced Warrants Approval.............. 30

III.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN. ..................... 30

CONCLUSION............................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................. 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................ 9, 13, 14

*Armstrong v. Board of Sch. Directors*,
   616 F.2d 305 (7th Cir. 1980), *overruled on other grounds*,
   *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)............................................ *passim*

*Barragan v. Evanger's Dog & Cat Food Co.*,
   259 F.R.D. 330 (N.D. Ill. 2009) ........................................................................... 9

*Burns v. Elrod*,
   757 F.2d 151 (7th Cir. 1985) ............................................................................... 30

*Butler v. Am. Cable & Tel., LLC*,
   No. 09 CV 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ............................... 8

*Butler v. Sears, Roebuck and Co.*,
   702 F.3d 359 (7th Cir. 2012) .............................................................................. 14

*Chapman v. Worldwide Asset Mgmt., L.L.C.*,
   2005 WL 2171168 (N.D. Ill. Aug. 30, 2005) ...................................................... 11

*De La Fuente v. Stokely-Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) .............................................................................. 11

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) .............................................................................. 17

*Fournigault v. Independence One Mortgage Corp.*,
   234 F.R.D. 641 (N.D. Ill. 2006) ......................................................................... 13

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ........................................................................... 2, 19

*Holtzman v. Turza*,
   No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) .............................. 11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010)...................................................................... *passim*

*In re NFL Players' Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014) ......................................................................... 31

*In re Ocean Bank*,
   No. 06 C 3515, 2007 WL 1063042 (N.D. Ill. Apr. 9, 2007)................................. 12

*In re Prudential Ins. Co. Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997)............................................................................. 31

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ............................................................................ 14

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................... 2, 14, 15

*Kaufman v. Am. Express Travel Related Servs. Co.*,
   264 F.R.D. 438 (N.D. Ill. 2009)....................................................................... 8, 10

*Keele v. Wexler*,

149 F.3d 589 (7th Cir. 1998) ................................................................................ 10

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
   No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007),
   *adhered to on reconsideration*, No. 05 C 5944, 2008 WL 687287
   (N.D. Ill. Mar. 12, 2008) .................................................................................. 16
*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................................ 19
*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) ............................................................................ 14
*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002) ......................................................................... 9
*Messner v. Northshore Univ. HealthSys.*,
   669 F.3d 802 (7th Cir. 2012) ............................................................................ 13
*Mirfasihi v. Fleet Mortg. Corp.*,
   356 F.3d 781 (7th Cir. 2004) ............................................................................ 31
*Muro v. Target Corp.*,
   No. 04 C 6267, 2005 WL 1705828 (N.D. Ill. July 15, 2005) ............................. 9
*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
   231 F.R.D. 280 (N.D. Ill. 2005) ....................................................................... 10
*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ................................................................................ 11
*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ............................................................................ 17
*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ..................................................................... 11, 12
*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009) .................................................................. 10, 13
*Smith v. Sprint Comms. Co., L.P.*,
   37 F.3d 612 (7th Cir. 2004) .............................................................................. 13
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ............................................................................ 15

## RULES

Fed. R. Civ. P. 23(a) .............................................................................. *passim*
Fed. R. Civ. P. 23(b)(3) ........................................................................... *passim*
Fed. R. Civ. P. 23(e) .............................................................................. *passim*

## OTHER AUTHORITIES

3 *Newberg on Class Actions* § 8.32 (4th ed. 2010) ....................................... 31
4 *Newberg on Class Actions* § 11.41 ........................................................... 15
Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778
   (3d ed. 2011) .................................................................................................... 13
Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) ......................... 2
*Newberg on Class Actions* § 11.53 ............................................................. 30

757969.1

## INTRODUCTION

Plaintiffs George Alea and Curtis Hamburg brought this class action on behalf of consumers who allege they suffered economic injuries stemming from the purchase of Louisville Slugger, Prime BBCOR Bats[1] (the "Bats"). The Bats feature a patented three-piece design incorporating Tru3 technology. *See, e.g.,* Second Amended Complaint at ¶12. The Tru3 technology is designed to allow for independent movement between the barrel and the handle of the Bats. *Id.* The principle purpose of the Tru3 technology is to act as a shock absorber for the hands of the batter. *Id.* The Bats were positioned at or near the top of the market in terms of pricing. *Id.* at ¶2. Nevertheless, Plaintiffs allege that the Bats were defectively designed and manufactured, which resulted in excessive movement between the barrel and handle of the Bats (the "Defect"). *Id.* at ¶ 3. Further, Plaintiffs allege that Defendant improperly denied and discouraged warranty claims without properly evaluating the Bats at issue in a methodical and systematic fashion. *Id.*

After more than a year of discovery and several rounds of arms-length negotiations, the parties entered into a Settlement Agreement that will resolve the litigation and provide substantial benefits to the Settlement Class. If approved, the Settlement will permit consumers to submit a simple claim form. Pursuant to the Settlement Agreement, each bat will be analyzed using an agreed upon, objective protocol. If a Compromised Connection is identified in the testing process, Class Members are entitled to a Replacement Bat, which will be a 918 Prime BBCOR or newer model Prime BBCOR Bat. If the Bat is not found to have a Compromised Connection, the Class Member will be entitled to receive their bat back or receive a fully transferrable discount of 20% off a new Prime BBCOR Bat with no expiration date.

---

[1] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted.

757969.1

The Settlement was reached only after Plaintiffs engaged in a comprehensive investigation through both formal and informal discovery, as well as after consultation with an expert. That review helped inform settlement discussions and helped Plaintiffs better appreciate the strengths and weaknesses of their case.

The Seventh Circuit—as other Circuits—favors the settlement of class action litigation. *See, e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). With this principle in mind, Plaintiffs ask the Court to take the first step toward resolving this case—preliminarily approving the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Preliminary approval is warranted given the strength of the settlement, which will conclude otherwise potentially risky litigation by providing significant benefits to the Settlement Class, including replacement bats featuring significant improvements in the Tru3 technology at issue. By granting preliminary approval, the Court will be allowing the settlement process to proceed so that the Settlement Class can promptly receive notice and a final fairness hearing can be scheduled, with class members having the opportunity to opt out of the class and to voice objections, if any. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see generally* Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that the Bats suffer from the Defect, which causes the handle of the Bats to rotate independent of the barrel after a brief period of use, even when the Bats are used in the ordinary course. As alleged by Plaintiffs, Defendant learned of the Defect shortly after the release of the Bats, but rather than recall the Bats, Defendant made advertising changes to make it seem as if the alleged Defect was intended. *See* Second Amended Complaint at ¶3. Plaintiffs allege that Defendant subsequently used the revised advertising as a basis to deny warranty

coverage. *Id.*

On January 23, 2017, Plaintiff Alea filed suit against Defendant Wilson Sporting Goods Company ("Wilson" or "Defendant") and Louisville Slugger[2] alleging violations of various state consumer protection laws, breach of state warranty law, unjust enrichment, and violation of the Magnuson-Moss Warranty Act. Dkt. No. 1. On March 14, 2017, Defendant Wilson moved to dismiss the complaint. Dkt. No. 12. Thereafter, at a hearing held March 20, 2017, Plaintiff made clear his intention to file an Amended Complaint and did so on April 4, 2017. *See* Dkt. Nos. 18, 20. On April 25, 2017, Defendant filed a second motion to dismiss. Dkt. No. 22. Plaintiff opposed the motion and Defendant replied. Dkt. Nos. 25, 27. On November 7, 2017, the Court issued an order granting the motion to dismiss with respect to implied warranty claims under Florida law and the Magnuson-Moss Warranty Act; in all other respects the motion to dismiss was denied. Dkt. No. 45. Pursuant to the Court's Order, on November 29, 2017, Defendant answered the Amended Complaint. Dkt. No. 51.

On January 26, 2018, Plaintiff moved to file a Second Amended Complaint, which motion was granted on January 31, 2018. Dkt. Nos. 67, 70. On February 2, 2018, Plaintiff filed his Second Amended Complaint, which included Dr. Curtis Hamburg as an additional Named Plaintiff. Dkt. No. 71. An answer to the Second Amended Complaint was filed on February 16, 2018. Dkt. No. 72.

While the motion to dismiss was pending, the parties began the discovery process in earnest. On March 30, 2017 the parties exchanged initial disclosures. Anderson Decl. at ¶3. On April 14, 2017, Plaintiff served his first set of Interrogatories and his first set of Requests for Production of Documents, along with a draft confidentiality order and ESI order. Anderson Decl.

---

[2] Plaintiff subsequently learned that Defendant Louisville Slugger was not a legal entity distinct from Wilson Sporting Goods Company, and, as a result, Plaintiff voluntarily dismissed Louisville Slugger. Dkt. No. 21.

757969.1

at ¶4. On May 24, 2017, Defendant served its first round of discovery. Anderson Decl. at ¶5. On June 6, 2017, Plaintiff moved for entry of the confidentiality order, which motion was granted on June 7, 2017. Dkt. Nos. 29, 30. After protracted and intense disagreement about the pace and sufficiency of the discovery responses, on October 16, 2017, Plaintiff moved to compel production of documents, interrogatory responses, a privilege and redaction log, and for entry of an ESI order. Dkt. Nos. 37, 40. Defendant cross-moved to compel on November 6, 2017. Dkt. No. 43. After briefing on the cross motions to compel and argument held December 21, 2017, the Court granted in part and denied in part Plaintiff's motion to compel on December 22, 2017. Dkt. Nos. 62, 63. While no further formal motions to compel were filed, the parties continued to disagree, vehemently at times, over the appropriate scope and pace of discovery, and reported as much to the Court at status conferences, including those held January 24, March 22, May 7, and June 20, 2018. Dkt. Nos. 66, 73, 81, and 91; Anderson Decl. at ¶6.

The contentious discovery process in this action resulted in Defendant's production of over 13,100 pages of documents in response to Plaintiffs' original and subsequent rounds of discovery requests. Anderson Decl. at ¶7. In addition, Plaintiffs conducted depositions of four Wilson employees prior to agreeing upon the instant proposed Settlement. Anderson Decl. at ¶8. On April 17, 2018, Plaintiffs deposed Patrick Ryan, Global Product Director, Baseball and Softball. Mr. Ryan was deposed in his individual capacity and as a 30(b)(6) representative on topics including advertising representations, consumer complaints, warranty claims, and warranty changes. Anderson Decl. at ¶8. On April 18, Plaintiffs deposed James Earley, Global Director of Innovation for Bats. Mr. Earley was deposed in his individual capacity, as well as a 30(b)(6) representative on topics including testing and analysis relating to the Tru3 connection, as well as manufacturing specifications for the Bats. Anderson Decl. at ¶8. On May 3, 2018, Plaintiffs deposed Michelle

Darnell, who has held the title of Lead Customer Service Representative for Defendant for more than five years. Anderson Decl. at ¶8. Finally, Plaintiffs deposed former Wilson marketing executive Caroline Reddish on July 10, 2018. Anderson Decl. at ¶8. Similarly, Defendant deposed Plaintiff George Alea and his minor son, Rod, on October 4, 2017. Anderson Decl. at ¶9. Defendant also deposed Plaintiff Dr. Curtis Hamburg and his minor son, Matthew, on June 13, 2018. Anderson Decl. at ¶10. In sum, discovery in this litigation was hard fought and thorough and covered all the topics essential to obtaining the proposed Settlement. Anderson Decl. at ¶11.

Plaintiffs sent their original settlement demand letter in this action on April 6, 2018. Anderson Decl. at ¶13. Defendant responded to the demand on May 25, 2018. Anderson Decl. at ¶13. Plaintiffs responded to Defendant's letter on June 13, 2018. Anderson Decl. at ¶13. Defendant responded to Plaintiffs' demand letter on June 21, 2018. Anderson Decl. at ¶13. At this point the negotiation became focused and intense involving both Defendant's outside counsel and directly including Defendant's General Counsel. Anderson Decl. at ¶13. The negotiations, not unlike the discovery process, were contentious at times and it appeared at numerous moments that no agreement could be reached. Ultimately, after more than three months of arms-length negotiation, on July 17, 2018, the parties reached an agreement in principle. Anderson Decl. at ¶14. Even after the agreement in principle the parties aggressively negotiated for their respective clients for several months in an effort to reduce the agreement in principle to the Settlement Agreement now before the Court. Anderson Decl. at ¶15.

## SUMMARY OF THE PROPOSED CLASS SETTLEMENT

Under the Settlement, which is attached as Exhibit 1 hereto, eligible Class Members are entitled to an inspection of their Bat to determine if it has a Compromised Connection. If the Bat is found to have a Compromised Connection, Class Members are entitled to a brand new Prime

757969.1

BBCOR Bat from model year 2018 or later. If the Bat is found not to have a Compromised Connection, Class Members are entitled to choose between return of their Bat or a 20% fully transferrable discount on a new Prime BBCOR bat that has no expiration date. Defendant will pay all costs of shipping for the Bats. Defendant will also pay all costs of class notice and claims administration. The parties agreed to the certification of a Settlement Class only for purposes of this proposed Settlement. The key terms in the Settlement Agreement are:

> ***The Proposed Settlement Class***: The Settlement Class will consist of:

> All individuals in the United States who purchased a new Louisville Slugger Prime 915 BBCOR baseball bat, or a new Louisville Slugger Prime 916 BBCOR baseball bat, or a new Louisville Slugger Prime 917 BBCOR baseball bat, from retailers after April 21, 2015, excluding auction sites such as eBay.

SA §2.A. The Settlement Class is an opt-out class under Rule 23(b)(3). *Id.* Class Membership can be objectively determined in part from records supplied by Defendant, and also by self-identification via the claims process. *Id.* at §§7.A-B.

> ***Relief Provided to the Settlement Class***: The Settlement is not structured as a common fund, thus there is no cap on the total value of the relief provided to the Settlement Class. Each Class Member who submits a proper Claim, online or by mail, whose Bat exhibits a Compromised Connection is entitled to receive a new Louisville Slugger Prime 918 Prime BBCOR baseball bat (or later model year). *Id.* at §3.A.2. Following submission of a proper Claim, online or by mail, in cases where No Compromised Connection is detected, Class Members may elect to receive their Bat back or receive a fully transferable, non-expiring voucher for a 20% discount good towards the purchase of a new Louisville Slugger Prime BBCOR baseball bat. *Id.* at §3.A.3. All shipping costs, regardless of the outcome of the inspection shall be borne by Wilson. *Id.* at §3.A.1. The Settlement requires completion of a simple and straightforward one-page claim form with a very lenient proof of purchase requirement. *Id.* at Exhibit B.

757969.1

***Separate Payment by Wilson of Administration Expenses***: Under the Settlement, Wilson will pay all costs related to providing notice to the Class, as well as administering the Settlement. *Id.* at §5.

***Settlement Administration***: The Settlement will be administered by KCC, LLC ("KCC"), a leading class action settlement administrator mutually agreed upon by the parties. KCC's responsibilities include: (a) sending electronic and USPS class notice as dictated by the terms of the Settlement Agreement; (b) conducting reasonable searches for Class Member addresses; (c) re-mailing any notices returned as undeliverable; (d) administering the publication notice, including establishing a settlement website and an Internet ad campaign; (e) processing claim forms; (f) processing opt-out requests; (g) providing a declaration concerning the adequacy of the reach of the notice program; and (h) providing reports about the claims process. *Id.*

***The Class Notice***: Consistent with Rule 23 and due process, the parties have negotiated a notice procedure designed to provide effective notice to the Class. The notice program provides for email notice in the first instance, where possible, followed by mail notice for those individuals for which Defendant possesses no email address, or for which the email notice bounces back, as well as publication notice, to reach as many additional Class Members as possible. *Id.* at §7. KCC will cause Publication Notice to be effectuated via an interactive website and via an Internet banner ad campaign. *Id.* at §7.C. The Settlement website will be established prior to the dissemination of the notice to provide information to Class Members about the terms of the Settlement, their rights, as well as dates, deadlines, and related information. *Id.* at Exhibit C. In addition, Wilson will create a portal at www.wilson.com for administration of the program that will also serve as a notice tool. *Id.* at §7.C.

***Claims Period***: The Claims Period shall begin on the date the Class Notice is disseminated

- 7 -

and end nine months from the date of the Class Notice. *Id.* at §3.C.

  ***Class Member Releases***: Upon final approval of the Settlement, all Class Members who do not opt out will have released all of their potential claims relating to their purchase of the Bats, with the exception of claims for personal injury. *See id.* at §4.

  ***Class Representative Incentive Awards***: Under the terms of the Settlement, Plaintiffs may seek, subject to Court approval, an incentive award of $5,000 each for the Named Plaintiffs ($10,000 total). *Id.* at §12.C. Both Named Plaintiffs were deposed, as were their minor sons for whom the Bats were purchased. Class Counsel will file a motion for the incentive awards pursuant to the schedule established by the Court in conjunction with the Preliminary Approval Order and will support the request in detail.

  ***Class Counsel's Attorneys' Fees and Costs***: Subject to this Court's approval, Class Counsel will seek reimbursement of their attorneys' fees and litigation expenses in the amount of $550,000, a significant negative multiplier on their collective lodestar. As with the incentive awards above, Class Counsel will file a separate motion, pursuant to the schedule established by the Court in conjunction with the Preliminary Approval Order, to support their fee request in detail.

<u>**ARGUMENT**</u>

**I. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.**

  The benefits of the proposed Settlement can be realized only through certification of the Settlement Class. *Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) ("Before addressing the substantive provisions of the Settlement Agreement, the court must first determine whether the proposed Class can be certified."). A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of class certification. *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *4 (N.D.

Ill. Oct. 6, 2011). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the parties have agreed to the certification of the following Settlement Class, under Fed. R. Civ. P. 23(a) and 23(b)(3):

> All individuals in the United States who purchased a new Louisville Slugger Prime 915 BBCOR baseball bat, or a new Louisville Slugger Prime 916 BBCOR baseball bat, or a new Louisville Slugger Prime 917 BBCOR baseball bat, from retailers after April 21, 2015, excluding auction sites such as eBay.

As discussed below, this proposed Settlement Class satisfies Rule 23's requirements.

**A.      This Case Satisfies All Rule 23(a) Prerequisites For Class Certification.**

Rule 23(a) requires that any proposed class meet four prerequisites: numerosity, commonality, typicality and adequacy of representation. Here, each element is satisfied.

### 1.      The Settlement Class Is Sufficiently Numerous.

The members of the Settlement Class are numerous, making their individual joinder impracticable. Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *Muro v. Target Corp.*, No. 04 C 6267, 2005 WL 1705828, at *13 (N.D. Ill. July 15, 2005) ("Permissive joinder is usually deemed impracticable where the class members number 40 or more."). This element is easily satisfied here: there are more than 50,000 Bats covered by the Settlement Agreement.

### 2.      Common Questions Of Law And Fact Affect All Settlement Class Members.

Commonality under Fed. R. Civ. P. 23(a)(2) involves an inquiry into whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat*

*Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs." *Kaufman*, 264 F.R.D. at 442 (internal quotation marks omitted).

This case comfortably satisfies this minimal standard. Here, the Court would be asked to address a series of identical questions. For example, as alleged in Plaintiffs' operative Second Amended Complaint, common questions of law and fact exist as to:

- Whether Defendant's Bats possess the Defect;

- Whether the Bats left Defendant's possession with the Defect;

- Whether Defendant's sales and marketing of the Bats was fraudulent and/or deceptive;

- Whether Defendant's conduct violated the consumer protection statutes of Illinois, Florida, New York, New Jersey, California, Michigan, Massachusetts, Minnesota, Missouri or Washington; and

- Whether Plaintiffs and Class members sustained damages resulting from Defendant's conduct and, if so, the proper measure of damages, restitution, equitable, or other relief.

*See* Dkt. 71 at ¶23. Underlying these basic common questions is a common nucleus of operative facts pertaining to the conduct by Defendant arising from the manufacture, marketing, and sale of the allegedly defective Bats. These central issues are common to all members of the Settlement Class, and thus the Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a).

### 3. The Representative Plaintiffs' Claims Are Typical Of Those Held By The Settlement Class.

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low

hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, typicality is satisfied because Plaintiffs' claims and those of the Settlement Class they seek to represent derive from the same operative facts. Plaintiffs purchased their Bats during the Class Period, and Plaintiffs, like the other Class Members, allege to have incurred damages as a result. These allegations form the basis of claims held by all members of the Settlement Class, and all claims are based on the same legal theories: Wilson's violation of warranty law and consumer protection statutes. As a result, the claims of the Plaintiffs are typical of those of the Settlement Class.

### 4. Plaintiffs And Class Counsel Have Adequately Protected The Settlement Class.

Rule 23(a)'s final requirement is that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis asks whether: (1) the plaintiff has a "'sufficient interest in the outcome to ensure vigorous advocacy" of the case; (2) does "not have interests that conflict with those of the class"; and (3) the class representatives' lawyers are "qualified, experienced, and able to conduct the litigation." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009) (quoting *Chapman v. Worldwide Asset Mgmt., L.L.C.*, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005)); *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

Plaintiffs' interests and claims are entirely consistent with those held by the Settlement Class, and logic, along with the history of this litigation, indicates that Plaintiffs have and will continue to vigorously advocate for Class Members. *See In re AT&T Mobility Wireless Data Servs.*

*Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) ("[E]nsure that there is no inconsistency between the named parties and the class they represent"). Since neither conflicting nor antagonistic claims exist, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018. Further, the adequacy requirements are modest at best and described as "not particularly demanding." *In re Ocean Bank*, No. 06 C 3515, 2007 WL 1063042, at *8 (N.D. Ill. Apr. 9, 2007). In sum, Plaintiffs are adequate representatives.

Plaintiffs' Class Counsel are reputable and highly experienced litigators, having successfully led numerous nationwide conumser class actions. *See infra,* §II.C.4. In this case, Class Counsel aggressively litigated the action including working with an engineering expert, communicating with Class Members and reviewing over 13,100 pages of discovery.  Counsel also produced documents on behalf of the Named Plaintiffs. Anderson Decl. at ¶¶9-10. All told, Plaintiffs' counsel have devoted substantial time and significant resources towards investigating the underlying facts, researching the applicable law, prosecuting the case, and negotiating the Settlement. Anderson Decl. at ¶12. Plaintiffs and their attorneys have demonstrated they are fully capable of litigating this case and that the interests of the Settlement Class have been and will be fairly and adequately protected.

**B.      The Proposed Settlement Class May Be Maintained Under Rule 23(b)(3).**

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

**1.      Common Questions Predominate In This Case.**

757969.1

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)). "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)).

Here, key common questions make the Settlement Class cohesive and would drive the resolution of the litigation, including whether the Bats that members of the Settlement Class purchased were marketed in the manner in which they allege, and whether, as alleged by Plaintiffs, the Bats suffer from the issues detailed in the Second Amended Complaint. In other words, the suit claims that Defendant "engaged in standardized conduct that violated laws that are common [to the proposed Settlement Class], and the class and subclasses will therefore be cohesive." *In re AT&T Mobility*, 270 F.R.D. at 345 (*citing Amchem Prods.*, 521 U.S. at 623). Further, because a settlement class is sought here and there will be no trial, the Court need not inquire whether the case, if tried, would present manageability problems with individualized issues. *Smith v. Sprint Comms. Co., L.P.*, 37 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem Prods.*, 521 U.S. at 591)).

### 2. A Class Action Is A Superior Method For Adjudication Of This Controversy.

The second Rule 23(b) element—superiority of class adjudication—is easily fulfilled here. "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not

a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck and Co.*, 702 F.3d 359, 362 (7th Cir. 2012). Rule-makers designed the class action device for a case like this: a large number of claims, in the thousands, which would not be economical to pursue on an individual basis. As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the members of the Settlement Class are far too numerous, and the typical individual claim is far too small, for Class Members to pursue their claims separately. The class action device is the only viable vehicle by which the vast majority of persons injured by Wilson's allegedly wrongful conduct may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and as such, Rule 23(b)(3) is satisfied.

## II. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A. Class Settlements Are Favored.

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. The 7th Circuit has held that "[f]ederal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196. "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (settlement is

- 14 -

particularly favored in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential class benefit). Here, a settlement will provide an appropriate resolution of the issues.

### B.    The Guidelines For Preliminary Approval Of Class Settlements.

At this juncture, Plaintiffs request that the Court grant preliminary approval of the Settlement so that notice may be sent to the Class. "District court review of a class action settlement proposal is a two-step process." *Armstrong*, 616 F.2d at 314. As the Seventh Circuit explains:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Id*.

In deciding whether to preliminarily approve a class settlement, courts should consider: (1) the strength of plaintiffs' claims compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby*, 75 F.3d at 1199). In addition, the court should consider the defendant's ability to pay. *Armstrong*, 616 F.2d at 314 (*citing Manual for Complex Litig.*, § 1.46, at 56 (West 1977)).

A finding of fairness is bolstered where, as here, the proposed Settlement was reached only after zealous, arms-length negotiations over several months. Anderson Decl. at ¶¶12-13; *see* 4

*Newberg on Class Actions* § 11.41 (fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's length bargaining, among other considerations). A reviewing court "do[es] not focus on individual components of the settlements, but rather view[s] them in their entirety in evaluating their fairness," and considers the facts "in the light most favorable to the settlement." *Armstrong*, 616 F.2d at 315.

At this preliminary approval stage, however, the review is abbreviated. "[T]he court's task is to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards . . ." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (citation omitted). As a result, courts in this district perform "a more summary version" of the final fairness inquiry at the preliminary approval stage. *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007), *adhered to on reconsideration*, No. 05 C 5944, 2008 WL 687287 (N.D. Ill. Mar. 12, 2008); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (*citing Kessler*).

Here, the proposed Settlement meets all the criteria for preliminary approval. As illustrated herein, Plaintiffs make a showing that the proposed Settlement is within the range of possible approval and provides important benefits to the Settlement Class. Further, there is no evidence whatsoever of collusion or overreaching: To the contrary, the proposed Settlement was the product of protracted and extensive arm's-length negotiations conducted by experienced counsel. Anderson Decl. at ¶¶12-13.

**C.    The Settlement Agreement Satisfies The Criteria For Preliminary Approval.**

**1.    The Proposed Settlement Agreement Achieves Substantial And Concrete Benefits For The Settlement Class Relative To The Uncertain**

### Outcome Of Continued Litigation.

Comparing concrete settlement benefits with hypothetical litigation outcomes is an inexact science. As the Seventh Circuit stresses, "[a] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002). Further, the evaluation of the costs and benefits of settlement must be tempered by the recognition that any compromise involves concessions from all parties. Indeed, "[t]he essence of settlement is compromise." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

Here, the Settlement strikes a compromise that affords fair recompense to Class Members. The Settlement is *uncapped* in the sense there is not a settlement fund from which Class Members would seek compensation and provides for free replacements of Bats that suffer from a Compromised Connection, ensuring that all Class Members who received something different than what they bargained for, can in fact receive the benefit of their bargain. What is more, the process for making a claim is simple and straightforward and designed to be as simple as possible while not encouraging fraud. The proposed Settlement also provides for the separate payment by Wilson of settlement and administrative expenses, incentive awards and attorney's fees and expenses. The relief afforded by the Settlement is substantial.

If the case had not settled, the outcome may have ended up being drastically different and to the detriment of the Settlement Class. To be clear, Plaintiffs believe that their claims are meritorious and are confident of prevailing on the merits, but candidly acknowledge that there are significant hurdles to obtaining a judgment as valuable as the one provided by the Proposed Settlement. Indeed, Wilson denies all allegations in the Second Amended Complaint. Wilson denies that its bats were defective. Wilson asserts that the patented Tru3 technology incorporated

into its bats is beneficial to players. Further, Wilson asserts that it provided warranty coverage to all consumers that had an issue with their Bat.

Further, certification of a litigation class and findings of liability would be hotly contested by Wilson. Wilson would likely contend that individual issues of proof, causation, and damages, and the need to address the many differences in state warranty and consumer protection laws could make the case unmanageable and undercut the propriety of class certification. Even if a litigation class were certified, Wilson would likely maintain that the alleged Defects within the Bats are rare or attributable to factors wholly outside Wilson's control (*e.g.*, misuse or abuse by consumers). Indeed, these are the very defenses detailed in the depositions of Defendant's employees and in Wilson's discovery responses. Moreover, even if certification were granted, Wilson would likely file a motion to decertify any classes certified by the Court.

Additionally, on the merits, Plaintiffs' claims will be subject to a "battle of the experts." Although Plaintiffs believe expert and other evidence on their side would support their claims that the Bats do not perform as marketed, Defendant would doubtless engage qualified experts, and there is always the risk that a finder-of-fact could side with Wilson's experts.

In short, complex litigation such as this is inherently risky, there is always a genuine chance that Plaintiffs may not succeed on the merits or, even if they do, they may not obtain the measure of relief they seek. *See In re AT&T Mobility*, 270 F.R.D. at 347. Given the challenges and difficulties Plaintiffs would face in protracted litigation, the opportunity to receive replacement of Bats exhibiting a Compromised Connection following a simple and straightforward claim process, along with the other relief provided to Class Members, is certainly within the range of reasonable outcomes.

  **2. Absent A Settlement, Intense And Costly Litigation May Have Likely Continued For Years.**

Had this case not settled, litigation could have continued for years. Through protracted, heated and contentious battles over discovery, Wilson and its aggressive legal team have proved to be tenacious adversaries. Class certification briefing would likely not take place for several months. Further, once the Court certified a litigation class, Wilson likely would have sought appellate review under Rule 23(f). Any detour to the Seventh Circuit would have delayed class relief for months, if not years. If the case proceeded to trial, any recovery could be delayed still longer for yet another appeal. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

Further, continued litigation would require continued discovery, as well as expert disclosures and depositions. Summary judgment motions would also be likely.

In short, in complex cases like this, continued litigation comes at considerable expense to both sides, and at significant expense of the limited resources of the Court. All the while, Plaintiffs and the members of the Settlement Class would be forced to sit idly with damaged Bats or pay for new bats with no guarantee of reimbursement in the future.

### 3.  No Known Opposition To The Settlement Exists At This Stage.

At this preliminary approval stage, there is no known opposition to the Settlement. Although Plaintiffs anticipate the Settlement Class will be generally pleased with the Settlement, they will respond to any concerns raised during the settlement process.

### 4.  The Proposed Class Counsel Has Provided Competent And Knowledgeable Guidance In This Case.

Courts are "'entitled to rely heavily on the opinion of competent counsel…'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325). Plaintiffs' Class

- 19 -

Counsel have extensive experience and have prosecuted numerous consumer class actions in this and other courts.

### a.     William Anderson of Handley Farah & Anderson PLLC

William Anderson is a founding partner at Handley Farah & Anderson, PLLC, a plaintiff's firm with offices in Washington, D.C., New York, New York, and Boulder, Colorado. The core of Mr. Anderson's practice focuses on advancing the rights of consumers who have been harmed by the products or practices of companies. Before co-founding Handley Farah & Anderson, Mr. Anderson was a partner with the law firm Cuneo Gilbert & LaDuca

For approximately 15 years, Mr. Anderson has successfully advocated for consumers in state and federal courts across the country. In so doing, Mr. Anderson has litigated a broad range of consumer class actions against some of the largest corporations in the world, as well as the United States government, and achieved excellent results for his clients. Mr. Anderson has halted deceptive and dangerous business practices and recovered hundreds of millions of dollars for consumers that were harmed by them. A few examples appear below.

- *Friedman v. Guthy-Renker*, (Case No. 2:14-cv-06009, C.D. Cal.) Mr. Anderson served as co-lead counsel in this class action alleging hair loss and scalp irritation caused by haircare products. After years of contentious litigation, in 2017 the Court approved a $26.25 cash settlement with no reversion, resulting in payments to class members of as much as $20,000 each.

- *True v. American Honda Motor Co.*, (Case No. 07-cv-00287, C.D. Cal.)  Mr. Anderson spearheaded this first-of-its-kind class action regarding fuel efficiency and battery issues in Honda Civic Hybrid vehicles. Anderson served as class counsel in

the lawsuit, which, after several years of contentious litigation, produced a settlement with actual cash benefits realized of well over $50 million.

- *In re Global Concepts Limited, Inc.*, (Case No. 12-cv-23064, S.D. Fla.) Mr. Anderson served as co-lead counsel in this litigation concerning more than three million falsely advertised pest control devices. Along with co-counsel, Anderson negotiated a nationwide settlement providing full refunds to class members with no cap on claims or risk of pro rata reduction. The settlement was finally approved from the bench without the filing of a single objection.

- *Davitt v. American Honda Motor, Co.*, (Case No. 2:13-cv-00381, D.N.J.) This case concerned allegedly defective lock actuators in Honda CR-V vehicles manufactured over a multi-year period. Anderson served as class counsel in the action which yielded an excellent warranty extension and full reimbursement of parts and labor for prior repairs. The Court granted approval from the bench.

- *Precht v. Kia Motors America*, (Case No. 14-cv-01148, C.D. Cal.) Mr. Anderson served as lead counsel in this litigation alleging that Kia sold thousands of Kia Sportage vehicles with defective brake switches. After a year of aggressively litigating this case, *Kia* issued a nationwide recall to provide repair and replacement of all proposed class vehicles, as well as reimbursement for out of pocket expenses incurred by the proposed class.

- *Gornstein v. TimberTech*, (Case No. 1:14-cv-12409 D.C. Mass) Mr. Anderson served as co-lead counsel in this action alleging a defect in certain decking manufactured by TimberTech. After protracted negotiations, a settlement providing free replacement decking and a $4.50 per square foot labor reimbursement was approved by the Court.

- 21 -

- *Hadley v. Subaru of America, Inc.,* (Case No. 15-cv-7210) Mr. Anderson served as lead counsel in this action concerning a defect related to the hood latch assembly of the Subaru Tribeca, which causes the hood to fly open unexpectedly at highway speeds, smashing the windshield, obstructing the driver's view and causing substantial risk of accidents. After six months of litigation, Subaru agreed to issue an international recall to address the defect at no cost to claimants

- *Ardon v. City of Los Angeles*, (Case No. BC363959) Mr. Anderson served as counsel in this case challenging the improper collection of telephone taxes by the City of Los Angeles. The settlement, which included the establishment of a settlement fund of $92,500,000, was approved by the Court.

- *Sloan v. United States*, (Case No. 06-483, U.S.D.C.D.C.) This litigation involved the illegal collection of taxes on long-distance telephone service by the IRS. After the filing of the case, the IRS acknowledged the inapplicability of the tax and established a program that has returned more than $8 billion dollars to American taxpayers (albeit through unilateral action, not through a settlement). Mr. Anderson was part of the small team at his prior firm that aggressively litigated the case on behalf of taxpayers.

Mr. Anderson has been recognized for his achievements, including being named as a Super Lawyers Rising Star for the last five years in a row. In addition to membership in the bars of Washington, DC, Pennsylvania and Colorado, and numerous legal organizations, Mr. Anderson also lectures on class action tactics and strategy.

### b.    Katrina Carroll of Lite DePalma Greenberg, LLC

Ms. Carroll heads LDG's Chicago office. She has been actively involved in many of the firm's class actions since 2001 in the areas of consumer fraud, antitrust, securities fraud and

- 22 -

ERISA. Early in her career, Ms. Carroll litigated some of the most prominent securities class actions in the country as Co-Lead counsel for defrauded investors, including *In re Motorola Securities Litigation* (N.D. Ill.), where LDG achieved a $193 million settlement, and in *In re Tenet Healthcare Corp. Securities Litigation*, (C.D. Cal.), which resulted in collective settlements to aggrieved investors of $281.5 million (including a $65 million auditor settlement, one of the largest of all time).

Ms. Carroll is particularly well-positioned to serve as Co-Lead Counsel in this matter. She has served as Co-Lead counsel in numerous relevant cases including *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* (MDL; N.D. Ill.), a sprawling products liability MDL relating to a defective product alleging complex warranty claims akin to those involved here. Ms. Carroll was instrumental in negotiating a $9.3 million settlement providing meaningful relief to consumers, which received final approval in March of 2017 and is currently being administered. During the final approval hearing, the Honorable Amy J. St. Eve of the United States District Court for the Northern District of Illinois, who presided over the litigation, praised Ms. Carroll as a "model I wish all lawyers would follow."

Ms. Carroll is currently involved in some of the most challenging and exciting consumer, privacy and antitrust class action litigation in the country today. Her current caseload includes:

- *Mednick v. Precor Inc.* (N.D. Ill): Ms. Carroll serves as Co-Lead counsel in a certified consumer fraud class action matter representing purchasers of Precor fitness machines, arising from Precor's representations concerning heart rate monitoring technology.

- *Keith v. Ferring Pharmaceuticals, Inc.* (N.D. Ill.): Ms. Carroll serves as Co-Lead counsel in a consumer class action on behalf of purchasers of the recalled fertility drug Bravelle.

- *Lewert v. P.F. Chang's China Bistro, Inc.* (N.D. Ill.): Ms. Carroll serves as Court-appointed

Co-Lead counsel in a class action representing P.F. Chang's customers who had their personal financial information compromised as a result of a security breach.

- *In re Ashley Madison Customer Data Security Breach Litigation* (MDL; E.D. Mo.): Ms. Carroll currently serves on Plaintiffs' Executive Committee in the multi-district class action involving the highly publicized data breach at Ashley Madison.

- *In Re: Community Health Systems, Inc., Customer Security Data Breach Litigation* (MDL; N.D. Ala.): Ms. Carroll serves on the Plaintiffs' Steering Committee in this data breach MDL matter arising from Defendants' failure to secure Plaintiffs' confidential patient data.

- *Automotive Wire Harness Systems Antitrust Litigation* (MDL; D. Mich.): Ms. Carroll is plaintiff's counsel in this multi-district antitrust class action brought by businesses against manufacturers of automotive wire harnesses and related parts. Plaintiffs allege an illegal price fixing conspiracy by these manufacturers that artificially inflated the prices of these products, in violation of the federal antitrust laws.

Ms. Carroll is recognized nationally as an authority on topics arising in class action litigation. She has spoken at many local and national conferences, including the American Bar Association's prestigious Annual National Institute on Class Actions (2014), Perrin's Class Action Litigation Conference (2015), the American Association for Justice's Convention (2016), and an Academic Symposium on consumer law issues hosted by Loyola University School of Law's Consumer Law Review (2017). Just recently, on April 12, 2018, Ms. Carroll was a panelist at "May it Please the Court: Symposium on Women Lawyers in the Courtroom," sponsored by the United States District Court for the Northern District of Illinois and the Chicago Bar Association. Ms. Carroll also speaks regularly on class action issues at the Chicago Bar Association.

- 24 -

Ms. Carroll currently serves on the Advisory Board of Loyola University School of Law's Institute for Consumer Antitrust Studies. She is a member of the Class Action Trial Lawyers Association, the Chicago Bar Association and a former member of New Jersey's John C. Lifland American Inn of Court.

### c. Jon Herskowitz of Baron & Herskowitz

Jon Herskowitz has been a trial lawyer for 29 years. First, as an Assistant State Attorney heading the narcotics unit for Janet Reno until 1994, then representing victims and those injured in consumer class actions, tort litigation, products liability, medical malpractice, employment discrimination, and nursing home neglect. He has been a partner in Baron and Herskowitz since 2008 practicing in all Florida State and Appellate Courts, Florida Federal Districts, and New Jersey and California.

He has lectured extensively for the National Institute of Trial Advocacy all over the country on trial techniques, depositions, and pre-trial investigation for over 25 years. He is the original author of the Trial Notebook for State Attorney's Office for the 11th Judicial Circuit.

The firm, which is AV-Rated specializes in the trial of civil litigation matters in Federal and State Courts emphasizing consumer class actions, professional negligence, civil rights, and personal injury matters. The firm has served as lead counsel and co-counsel representing Plaintiffs in recent class actions, as follows:

- *Michael Cook v. Sony Electronics et al.*, Southern District of New York. A consumer defect class action filed brought on behalf of over 75,000 consumers alleged an inherent defect in widely advertised televisions and the failure to provide an appropriate remedy. A monetary settlement was negotiated and approved by the Court.

- *Mark Risi and Terry Hollis v. Pioneer Electronics (USA) Inc.*, a consumer defect class action filed in Los Angeles, California and West Palm Beach, Florida brought on behalf of over 150,000 consumers alleged an inherent defect and the failure to provide an appropriate remedy. A monetary settlement was negotiated and approved by the Court.

- *Dishkin v. Tire Kingdom Retail Corp.*, Eleventh Judicial Circuit - Florida. A class action filed against Tire Kingdom for violating several false advertising statutes in charging a shop fee. A monetary settlement was negotiated and approved by the Court.

- *Toister v. Alegis Corp.*, Southern District of Florida. FDCPA class action in which there were thousands of customers significantly affected by a computer error. A monetary settlement was negotiated and approved by the Court.

- *James Soper et al. v. Wyndham Hotels*, A multi-jurisdictional nationwide class action. Filed in Madison County, Illinois, Miami, Florida, and San Diego, California. Brought on behalf of thousands of consumers alleging that Wyndham misrepresented an "energy crisis" and fraudulently charged consumers an "energy surcharge." A monetary settlement was negotiated and approved by the Court.

- *Kenneth Fischer, M.D. et al. v. Foundation Health*, Eleventh Judicial Circuit - Florida. A statewide class action brought on behalf of thousands of Florida physicians alleging that Foundation Health failed to promptly and appropriately pay physicians' bills for services rendered to patients. A monetary settlement was negotiated and approved by the Court.

- *LaPlanche et al. v. Foot Locker*, Eleventh Judicial Circuit - Florida. A nationwide class action brought on behalf of African American Managerial employees alleging discrimination based on Race. A monetary settlement was negotiated and approved by the Court.

- *Friedman v. Samsung Electronics America and Summer v. Toshiba American Consumer Products Inc.*, Superior Court of New Jersey. A nationwide class action on behalf of millions of consumers alleging that Samsung and Toshiba DVD players contained inherent defects rendering them incompatible with the DVD video specification and unable to properly play DVD video discs. The settlements approved by the Court were valued at over $100 Million Dollars.

- *James Hutton, et al. v. Miami-Dade County*, Eleventh Judicial Circuit - Florida. A county-wide class action for retaliation against employees for exercising their Worker's Compensation rights under Florida law. The case was settled after the Court granted Plaintiffs' Motions for Class Certification and Summary Judgment. All class members were provided 100% of all lost wages.

- *J.S. v. American Traffic Solutions/Dougherty et al. v. Hertz Corp.*, Seventeenth Judicial Circuit - Florida and United States District Court - New Jersey - related class actions filed in Florida State Court seeking a statewide class and federal court in New Jersey seeking a nationwide class for consumers who were improperly charged an administrative fee. The settlements approved by the Court exceeded $12,000,000.

- *Gjolaj v. Riddex Corp.*, Southern District of Florida. A nationwide class in which it was alleged that Riddex devices sold using a patented technology for pests did not meet perform as represented. A monetary settlement was negotiated and approved by the Court

- *Bornstein v. Whirlpool Corp.*, Eleventh Judicial Circuit - Florida. A nationwide class action brought by purchasers of Whirlpool's Kitchen Aid 7-Qt./1.3 HP Standing Mixers. The case was brought under deceptive practices and breach of warranty for representations

concerning the horsepower of the mixers. A settlement was negotiated and approved by the Court.

- *Perez v. Golden Heritage Foods*, Eleventh Judicial Circuit - Florida. A nationwide class action brought on behalf of purchasers of Busy Bee Honey alleging deceptive practices for violating state regulations and breach of warranty. A settlement was negotiated and approved by the Court.

- *McMichael v. Shop-Vac Corp.*, USDC New Jersey – A nationwide class action brought on behalf of purchasers of the Shop-Vac brand Wet/Dry Vacuum alleging deceptive practices for violating regulations concerning the horsepower of the Wet/Dry Vacuums. A settlement was negotiated and approved by the Court.

The firm consists of two main partners, one associate, three of-counsel attorneys, and an experienced and thoroughly professional support staff. The partners have been in practice over 65 years combined and have tried over 200 jury trials.

### d.  Charles LaDuca of Cuneo Gilbert & LaDuca, LLP

Cuneo Gilbert & LaDuca, LLP has devoted the majority of its practice to the representation of clients involved in consumer protection, products liability, antitrust, securities and corporate governance.  The firm has achieved success for a range of clients by: working to recover hundreds of millions of dollars for homeowners with defective construction materials (*see* below); helping to recover billions of dollars in shareholder litigation (notably, the firm served as Washington counsel for the plaintiffs in the *Enron Securities Litigation, In re Enron Corp. Sec. Litig*., No. H-01-3624 (S.D. Tex. 2006)); obtaining compensation for Holocaust survivors (*see Rosner, et al. v. United States*, No. 01-cv-1859 (S.D. Fla.), the firm acted as Co-Lead Counsel in a case on behalf of survivors of the Holocaust in Hungary whose fortunes were misappropriated by the U.S.

- 28 -

government in the final days of World War II); and, in several jurisdictions, ending the practice of jails subjecting minor law violators to unconstitutional strip searches. In addition, in 1991, with two California firms, the firm brought the so-called "Joe Camel" case, *Mangini v. RJ Reynolds Tobacco Co.*, 7th Cal. 4th 1057 (1994), which alleged essentially that R. J. Reynolds Tobacco Company's Joe Camel Advertising Campaign illegally tricked children into smoking cigarettes.

Named Partner Charles LaDuca has a wealth of litigation, leadership, claims resolution, and strategy experience. He has successfully led large, complex litigation (including multidistrict litigation) and has a demonstrated the ability to organize and manage large litigation and to do so cooperatively with counsel for all of the involved parties. Other federal courts have recognized as much by appointing him to leadership positions in other cases and class actions.

As it relates to the allegations in this case, Mr. LaDuca possess years of experience litigating and prosecuting complex consumer misrepresentation class actions. *See In re: CertainTeed Corp. Roofing Shingle Products Liability Litig.*, MDL No. 1817 (E.D.Pa.) (defective organic shingles litigation, firm served as Co-lead Counsel in an MDL that secured a settlement valued at more than $700 million); *In re Building Materials Corp. of Amer. Asphalt Roofing Shingle Prods. Liab. Litig.*, MDL No. 2283 (D.S.C.) (Co-Lead Counsel for a class of approximately six million individuals); *In re: Kitec Plumbing System Products Liability Litig.*, MDL No. 2098 (N.D. Tex.) (Co-Lead Counsel to a $125 million settlement concerning defective Kitec Plumbing Systems sold throughout the United States); *In re Zurn Pex Plumbing Litig.*, MDL No. 1958 (D. Minn.); *In re Uponor, Inc. F1807 Plumbing Prods. Liab. Litig.*, MDL No. 2247 (D. Minn.) (Lead Counsel); *In re: CertainTeed Fiber Cement Siding Litig.*, MDL No. 2270 (E.D. Pa.); *In re IKO Roofing Shingle Products Liability Litig.*, MDL No. 2104 (M.D. Il.); *In re: HardiPlank Fiber Cement Siding Litig.*, MDL No. 2359 (D. Minn.); *Gonzalez, et al. v. Owens*

*Corning*, No. 13-cv-1378 (W.D. Pa.) (design defect and misrepresentation action); *Melillo, et. al. v. Building Products of Canada*, Case No. 618-11 (Vermont St. Ct.) (settlement valued at approximately $39-$100 million); *In re: Groupon, Inc. Mktg and Sales Practices* Litig., MDL No. 2238 (D.D.C.).

With this experience in mind, Plaintiffs' Proposed Class Counsel, strongly recommend the proposed Settlement because it ensures that Class Members have the opportunity to receive the benefit of their bargain. Furthermore, the Settlement before the Court will enable Class Members to avoid the delays and risks attendant to further litigation.

> ### 5. The Stage Of The Proceedings And Discovery Produced Warrants Approval.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325.

Plaintiffs have developed an informed understanding of this case via discovery and independent investigation. Plaintiffs' counsel carefully reviewed the discovery produced by Defendant, deposed key employees, consulted with a knowledgeable expert, and, as a result, were able to engage in meaningful settlement negotiations. Anderson Decl. at ¶11. Having previously brought numerous class actions alleging misrepresentations and breaches of warranty, against a variety of companies, Plaintiffs' counsel understand the applicable law and the strengths and weaknesses of their case. The Court and counsel are in an excellent position, therefore, to evaluate the merits of the proposed Settlement versus the risk and costs associated with continued litigation.

## III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN.

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Courts have consistently recognized that Rule 23(e) and due process do not require

that every class member receive actual notice, as long as the selected method will likely apprise interested parties. *Newberg on Class Actions* § 11.53; *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) (notice must be reasonably calculated to reach most interested parties); *In re Prudential Ins. Co. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (due process does not require perfection). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *In re AT&T Mobility*, 270 F.R.D. at 351 (quoting 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010)).

As set forth in the Settlement Agreement, the Class Notice, developed by KCC, a well-respected notice and claims administrator, establishes a vigorous and informative methodology for providing notice to the Class. ***First***, notice will be emailed or mailed directly to members of the Settlement Class to at least those for whom Wilson has a mailing address. SA §§7.A-B. ***Second***, a settlement website will be created and maintained to inform Class Members. *Id.* at §7.C. ***Third***, Wilson will establish a portal at [www.wilson.com](http://www.wilson.com) the place where consumers are most likely to go to seek information if and when their Bats manifest a Compromised Connection. *Id.* ***Fourth***, KCC will engage in an Internet banner campaign directed towards maximizing Class Members' exposure to the notice program. *Id.*

The Class Notice's various components satisfy due process. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (approving a notice for a nationwide class that consisted of nationwide publication notice campaign and establishment of a website); *In re NFL Players' Concussion Injury Litig.*, 301 F.R.D. 191, 206 (E.D. Pa. 2014) (approving notice program including Internet banner ads).

The Class Notice provides the Settlement Class with critical information about Settlement terms in a concise and neutral way and: (a) explains how members of the Settlement Class can seek relief; (b) describes the Settlement; (c) explains how members of the Settlement Class may opt-out; (d) informs members of the Settlement Class of their right to object; (e) discloses the intended fee application of Plaintiffs' Class Counsel; (f) provides the upcoming deadlines and the date of the Fairness Hearing; and (g) explains how to get more information about the case, settlement, notice, or rights under the Settlement Agreement. As such, the Class Notice more than satisfies the requirements for Rule 23(e) and Due Process.

## **CONCLUSION**

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order submitted to the Court's proposed order inbox.

Dated: December 7, 2018

Respectfully submitted,

*/s/ Katrina Carroll*

Katrina Carroll
Kyle A. Shamberg
**LITE DEPALMA GREENBERG LLC**
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com

William H. Anderson (Pro Hac Vice)
**HANDLEY FARAH & ANDERSON, PLLC**
4730 Table Mesa Drive
Suite G-200
Boulder, CO 80305
Tel. (303) 800-9109
wanderson@hfajustice.com

- 32 -

757969.1

Jon Herskowitz (Pro Hac Vice)
**BARON & HERSKOWITZ**
9100 S. Dadeland Blvd.
Suite 1704
Miami, FL 33156
Tel.  (305) 670-0101
jon@bhfloridalaw.com

Charles J. LaDuca (Pro Hac Vice)
Brendan S. Thompson (Pro Hac Vice)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW
Washington, DC 20016
Tel. (202) 789-3960
charlesl@cuneolaw.com
brendant@cuneolaw.com

***Plaintiffs' Proposed Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of a Settlement Class, Appointment of Class Counsel, and Related Relief** was electronically filed with the Clerk of the Court via the CM/ECF system, which served copies on all interested parties registered for electronic service.

/s/ *Katrina Carroll*
Katrina Carroll
