# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GEORGE ALEA and CURTIS HAMBURG,
individually and on behalf of all others
similarly situated,

Plaintiffs,

- against -

WILSON SPORTING GOODS CO.

Defendant.

Case No. 1:17-cv-00498

Honorable Gary Feinerman

Magistrate, Honorable Mary M. Rowland


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
SERVICE AWARDS, AND ATTORNEYS' FEES AND EXPENSES**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

    A. History of the Litigation ......................................................................... 2

    B. The Settlement's Terms ........................................................................... 3

    C. Class Members' Overwhelmingly Positive Response to the Settlement ...................... 6

ARGUMENT ......................................................................................................... 7

I.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ........................................ 7

    A. The Class Satisfies the Requirements of Rule 23(a) ................................... 9

        1.  Numerosity ............................................................................... 9

        2.  Commonality .............................................................................. 9

        3.  Typicality................................................................................ 10

        4.  Adequacy ................................................................................ 11

    B. The Settlement Class Meets the Requirements of Rule 23(b)(3) ..................... 12

        1.  Common Questions Predominate ..................................................... 12

        2.  A Class Action Is the Superior Method for Adjudicating this Controversy................. 13

II.  THIS COURT SHOULD GRANT FINAL APPROVAL OF THE
SETTLEMENT .................................................................................................. 14

    A. The Settlement Provides Considerable Relief Relative to the Risks of Continued
Litigation ............................................................................................. 15

    B. The Complexity, Expense and Likely Duration of the Litigation Supports
Approval ............................................................................................. 18

    C. The Lack of Any Objections or Opt-Outs Further Suggests that Final Approval
Should Be Granted. ............................................................................... 19

    D. The Opinion of Class Counsel Weighs in Favor of Approval........................ 19

    E. The Stage of the Proceedings and the Amount of Discovery Completed at the
Time of Settlement Supports Approval ................................................... 20

III. THE NOTICE PROGRAM WAS EFFECTIVE .................................................... 20

IV. THIS COURT SHOULD APPROVE THE CLASS REPRESENTATIVE
SERVICE AWARDS FOR PLAINTIFFS ALEA AND HAMBURG. ................................. 22

V.  THE COURT SHOULD APPROVE ATTORNEYS' FEES AND EXPENSES.................. 23

    A. Lodestar vs. Percentage Methods ......................................................... 23

    B. The Lodestar Method is Appropriate Under Seventh Circuit Jurisprudence ................. 25

    C. The Lodestar Method is the Most Equitable Approach.............................. 26

    D. Class Counsel's Requested Fees and Expenses are Reasonable ..................... 28

i

E.  All Other Factors to be Considered Weigh in Favor of Approval of the
Requested Fee................................................................................................. 30

1.  The lawsuit involved complex, novel questions of fact and law................................. 30

2.  The degree of success obtained ................................................................... 30

3.  Preclusion of other work ........................................................................... 31

CONCLUSION ............................................................................................... 31

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
   No. 06-cv-701-MJR-DGW, 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015).............. 29
*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................... 8, 13, 14
*Americana Art China Company, Inc. v. Foxfire Printing and Packaging, Inc.*,
   743 F.3d 243 (7th Cir. 2014) ..................................................................................... 23
*Anderson v. AB Painting and Sandblasting Inc.*,
   578 F.3d 542 (7th Cir.2009) ...................................................................................... 24
*Aranda v. Carribbean Cruise Line*,
   No. 12-cv-4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017),
   *aff'd* at 896 F.3d 792 (7th Cir. 2018).......................................................................... 19
*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
   616 F.2d 305, 315 (7th Cir. 1980),
   *abrogated on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ................. 15
*Beesley v. Int'l Paper Co.*,
   No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ............ 29
*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ..................................................................................... 13
*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ..................................................................................... 11
*Chambers vs. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) ......................................................................... 16
*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ............................................................................... 22, 31
*Cooper v. Casey*,
   97 F.3d 914 (7th Cir. 1996) ...................................................................................... 29
*Edwards v. First Am. Corp.*,
   No. 07-CV-3796, 2016 WL 8999934 (C.D. Cal. Oct. 4, 2016) ........................................... 16
*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ...................................................................................... 23
*Frank Music Corp. v. MGM, Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ................................................................................... 27
*Gastineau v. Wright*,
   592 F.3d 747 (7th Cir. 2010) ............................................................................... 24, 25
*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................... passim
*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ............................................................................... 25, 27
*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................ 24
*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (7th Cir. 1996) ..................................................................................... 13
*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................... 10, 11, 12, 14

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.,*
   No. 09 C 7670, 2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) ............................................. 22

*In re Mexico Money Transfer Litig. (W. Union & Valuta),*
   164 F. Supp. 2d 1002 (N.D. Ill. 2000)..................................................................... 10, 19

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.,*
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................................... passim

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
   No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................. 13

*In re Sw. Airlines Voucher Litig.,*
   799 F.3d 701 (7th Cir. 2015)................................................................. 25, 26, 31

*In re Sw. Airlines Voucher Litig.,*
   No. 11 C 8176, 2013 U.S. Dist. LEXIS 143146 (N.D. Ill. Oct. 3, 2013)........................... 24, 25

*In re Sw. Airlines Voucher Litig.,*
   No. 11 C 8176, 2014 U.S. Dist. LEXIS 84072 (N.D. Ill. June 20, 2014) .............................. 26

*In re Sw. Airlines Voucher Litig.,*
   No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)................................ 19, 22, 23

*In re Trans Union Corp. Privacy Litig.,*
   No. 00 C 4729, 2009 U.S. Dist. LEXIS 116934 (N.D. Ill. Oct. 1, 2009).............................. 24

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ....................................................................... 7

*Mars Steel Corp. v. Continental Ill. Nat. Bank and Trust Co. of Chicago,*
   834 F.2d 677 (7th Cir. 1987) ...................................................................... 20

*Martin v. Reid,*
   818 F.3d 302 (7th Cir. 2016) ....................................................................... 9

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ..................................................................... 27

*Mullins v. Direct Digital, LLC,*
   795 F.3d 654 (7th Cir. 2015) ...................................................................... 21

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014) ...................................................................... 15

*Pickett v. Sheridan Health Care Ctr.,*
   664 F.3d 632 (7th Cir. 2011) ...................................................................... 29

*Rand v. Monsanto Co.,*
   926 F.2d 596 (7th Cir. 1991) ...................................................................... 12

*Retired Chicago Police Ass'n v. City of Chicago,*
   7 F.3d 584 (7th Cir. 1993)......................................................................... 11

*Reynolds v. Beneficial Nat. Bank,*
   288 F.3d 277 (7th Cir. 2002)................................................................... 16, 18

*Robinson v. City of Edmond,*
   160 F.3d 1275 (10th Cir. 1998) .................................................................... 27

*Rodriguez-Hernandez v. Miranda-Velez,*
   132 F.3d 848 (1st Cir. 1998) ...................................................................... 27

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,*
   574 F.3d 852 (7th Cir. 2009) ...................................................................... 25

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2011)....................................................... passim

*Smith v. Sprint Comms. Co., L.P.,*

37 F.3d 612 (7th Cir. 2004) ................................................................................ 14

*Spegon v. Catholic Bishop of Chicago*,
    175 F.3d 544 (7th Cir. 1999) ...................................................................... 29

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ............................................................... 15, 16

*Wolf v. Frank*,
    555 F.2d 1213 (5th Cir. 1997) ................................................................... 27

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 CIV. 8230 GF, 2015 WL 4275540 (N.D. Ill. July 13, 2015) .................. 11

## Other Authorities

4 *Newberg on Class Actions* § 11.41 ........................................................... 15

## Rules

Fed. R. Civ. P. 23(a) ....................................................................... 8, 9, 11
Fed. R. Civ. P. 23(b)(3) ...................................................................... 4, 8
Fed. R. Civ. P. 23(c) ...................................................................... 18, 21
Fed. R. Civ. P. 23(e)(2) ......................................................................... 7

## INTRODUCTION

Plaintiffs brought this class action on behalf of consumers who allege they suffered economic injuries stemming from the purchase of certain Louisville Slugger Prime BBCOR Bats[1] (the "Bats"). The Bats at issue are primarily used by high school and college baseball players. BBCOR bats are unique in that the BBCOR standard imposes a deliberate restriction on bats used for high school and college baseball. The Bats feature a patented three-piece design incorporating Tru3 technology. *See, e.g.,* Second Amended Complaint ("SAC") at ¶12. One purpose of the Tru3 technology is to act as a shock absorber for the hands of the batter. *Id.* But Plaintiffs allege that the Bats were defectively designed and manufactured, which resulted in excessive movement between the barrel and handle of the Bats (the "Defect"). *Id.* at ¶ 3. Further, Plaintiffs allege that Defendant improperly denied and discouraged warranty claims without properly evaluating the Bats at issue in a methodical and systematic fashion. *Id.*

Wilson filed an Answer to Plaintiffs' SAC, denying the allegations of the SAC and denying wrongdoing or liability on any of the claims asserted against Wilson. Further, Wilson asserted various affirmative and other defenses to the SAC and vigorously defended against the lawsuit.

After more than a year of extensive discovery and months of protracted negotiations, the parties entered into a Settlement Agreement, which the Court preliminarily approved on December 14, 2018. The Settlement provided a systematic two-test process for claims made on Bats including a more structured scientific process of testing for Compromised Connections, a structured return process with no mailing costs borne by consumers, extended warranties by virtue of the Settlement, and access to a bat that features improved design and materials. The Settlement permits consumers to submit a simple claim form, and, if a Compromised Connection is identified utilizing

---

[1] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted.

the objective criteria developed for the testing process, Class Members are entitled to a Replacement Bat, which will be a 918 Prime BBCOR or newer model Prime BBCOR Bat. If the Bat is not found to have a Compromised Connection, the Class Member will be entitled to receive their bat back or receive a fully transferrable discount of 20% off a new Prime BBCOR Bat, with no expiration date.

Since preliminary approval, Class Notice has been disseminated and the claims period has begun. Class Members' response has been overwhelmingly positive: no requests for exclusion and no objections filed. The deadline to request exclusion or object expired on May 6, 2019. Accordingly, Plaintiffs ask that the Court approve the Settlement as fair, reasonable and adequate, confirm its prior certification of the Settlement Class, and enter the proposed final judgment dismissing this case with prejudice.[2]

## FACTUAL BACKGROUND

### A.    History of the Litigation

On January 23, 2017, Plaintiff Alea filed suit against Defendant Wilson Sporting Goods Co. ("Wilson" or "Defendant") and Louisville Slugger[3] alleging violations of various state consumer protection laws, breach of state warranty law, unjust enrichment, and violation of the Magnuson-Moss Warranty Act. Dkt. No. 1. Ultimately, on November 7, 2017, Defendant's motion to dismiss was granted with respect to implied warranty claims under Florida law and the Magnuson-Moss Warranty Act; in all other respects the motion to dismiss was denied.  Dkt. No.

---

[2] Wilson joins in the request for final approval of this class settlement and Class Counsel's requests for attorney's fees and expenses not to exceed $550,000, and will not be making its own filing in support of this motion. Wilson does not, however, join in any of Plaintiffs' statements in this filing concerning the facts, legal issues or likelihood of outcome if this case was not settled.

[3] Plaintiff subsequently learned that Defendant Louisville Slugger was not a legal entity distinct from Wilson Sporting Goods Co., and, as a result, Plaintiff voluntarily dismissed Louisville Slugger. Dkt. No. 21.

45. With leave of Court, on February 2, 2018, Plaintiff filed his Second Amended Complaint, which included Dr. Curtis Hamburg as an additional Named Plaintiff. Dkt. No. 71. An answer to the Second Amended Complaint was filed on February 16, 2018. Dkt. No. 72.

While the motion to dismiss was pending, the parties began discovery. As detailed in Plaintiffs' motion seeking preliminary approval, multiple motions to compel were filed by Plaintiffs and cross-motions were filed by Defendant. *See* Dkt. Nos. 37, 40, 43, 62, and 63. The disputes regarding discovery continued and were discussed with the Court at several additional hearings. *See* 66, 73, 81, and 91.

The contentious discovery process resulted in Defendant's production of over 13,100 pages, depositions of four Wilson employees in their individual capacity, two as 30(b)(6) witnesses, as well as the depositions of Mr. Alea and Dr. Hamburg, and both their minor sons. *See* Declaration of William Anderson ("Anderson Decl.") at ¶¶6-8 (attached hereto as Exhibit 1).

Plaintiffs sent their original settlement demand letter in this action on April 6, 2018. Anderson Decl. at ¶9. After more than three months of protracted arms-length negotiation, on July 17, 2018, the parties reached an agreement in principle. Anderson Decl. at ¶10. And even after the agreement in principle was reached, the parties aggressively negotiated for their respective clients for several months in an effort to reduce their agreement to writing and work through all the granular details of the Settlement Agreement now before the Court for final approval. Anderson Decl. at ¶11.

## B.    The Settlement's Terms

The Settlement provides considerable benefits to the Settlement Class. It calls for a new and scientifically based inspection process to protect consumers' warranties, a warranty extension, an organized and structured return process with the costs of mailing borne by Defendant, and access to newer bats made using improved technology and materials. During the course of this

litigation, Defendant has corrected and improved the connection or "defect" with each new generation of the bat so this represents a significant improvement for the Settlement Class.

Under the Settlement, eligible Class Members are entitled to an inspection/testing of their Bat to determine if it has a Compromised Connection. If the Bat is found to have a Compromised Connection, Class Members are entitled to a brand new Prime BBCOR Bat from model year 2018 or later. If the Bat is found not to have a Compromised Connection, Class Members are entitled to choose between return of their Bat or a 20% fully transferrable discount on a new Prime BBCOR bat that has no expiration date. Defendant will pay all costs of shipping for the Bats regardless of whether the bat is determined to have a Compromised Connection, or not. Defendant will also pay all costs of class notice and claims administration.

The parties agreed to the certification of a Settlement Class only for purposes of this proposed Settlement. The key terms in the Settlement Agreement are:

*The Proposed Settlement Class*: The Settlement Class will consist of:

> All individuals in the United States who purchased a new Louisville Slugger Prime 915 BBCOR baseball bat, or a new Louisville Slugger Prime 916 BBCOR baseball bat, or a new Louisville Slugger Prime 917 BBCOR baseball bat, from retailers after April 21, 2015, excluding auction sites such as eBay.

SA §2.A. The Settlement Class is an opt-out class under Rule 23(b)(3). *Id.* Class membership can be objectively determined in part from records supplied by Defendant, and also by self-identification via the claims process. *Id.* at §§7.A-B.

*Relief Provided to the Settlement Class*: The Settlement is not structured as a common fund, thus there is no cap on the total value of the relief provided to the Settlement Class. Each Class Member who submits a proper Claim, online or by mail, whose Bat exhibits a Compromised Connection is entitled to receive a new Louisville Slugger Prime 918 Prime BBCOR baseball bat (or later model year). *Id.* at §3.A.2. Following submission of a proper Claim, online or by mail, in

cases where No Compromised Connection is detected, Class Members may elect to receive their Bat back or receive a fully transferable, non-expiring voucher for a 20% discount good towards the purchase of a new Louisville Slugger Prime BBCOR baseball bat. *Id.* at §3.A.3. All shipping costs, regardless of the outcome of the inspection shall be borne by Wilson. *Id.* at §3.A.1. The Settlement requires completion of a simple and straightforward one-page claim form with a very lenient proof of purchase requirement. *Id.* at Exhibit B.

***Separate Payment by Wilson of Administration Expenses***: Under the Settlement, Wilson will pay all costs related to providing notice to the Class, as well as administering the Settlement. *Id.* at §5.

***Settlement Administration***: The Settlement will be administered by KCC, LLC ("KCC"), a leading class action settlement administrator mutually agreed upon by the parties. KCC's responsibilities include: (a) sending electronic and USPS class notice as dictated by the terms of the Settlement Agreement; (b) conducting reasonable searches for Class Member addresses; (c) re-mailing any notices returned as undeliverable; (d) administering the publication notice, including establishing a settlement website and an Internet ad campaign; (e) processing claim forms; (f) processing opt-out requests; (g) providing a declaration concerning the adequacy of the reach of the notice program; and (h) providing reports about the claims process. *Id.*

***The Class Notice***: Consistent with Rule 23 and due process, the parties have negotiated a notice procedure designed to provide effective notice to the Class. The notice program provided for email notice in the first instance, where possible, followed by mail notice for those individuals for whom Defendant possessed no email address, or for which the email notice bounced back, as well as publication notice, to reach as many additional Class Members as possible. *Id.* at §7. KCC will cause Publication Notice to be effectuated via an interactive website and via an Internet banner ad campaign. *Id.* at §7.C. The Settlement website was established prior to the dissemination of the

5

notice to provide information to Class Members about the terms of the Settlement, their rights, as well as dates, deadlines, and related information. *Id.* at Exhibit C. In addition, Wilson created a portal at [www.wilson.com](www.wilson.com) for administration of the program that also serves as a notice tool. *Id.* at §7.C.

*Claims Period*: The Claims Period began on the date the Class Notice was disseminated and ends nine months from the date of the Class Notice, on October 10, 2019. *Id.* at §3.C.

*Class Member Releases*: Upon final approval of the Settlement, all Class Members who do not opt out will have released all of their potential claims relating to their purchase of the Bats, with the exception of claims for personal injury. *See id.* at §4.

*Class Representative Incentive Awards*: Under the terms of the Settlement, Plaintiffs seek, subject to Court approval, an incentive award of $5,000 each for the Named Plaintiffs ($10,000 total). *Id.* at §12.C. Both Named Plaintiffs were deposed, as were their minor sons for whom the Bats were purchased. Declarations supporting these requested awards are being contemporaneously filed in conjunction with Plaintiffs' motion seeking an award of incentive awards, costs, and attorneys' fees.

*Class Counsel's Attorneys' Fees and Costs*: Subject to this Court's approval, Class Counsel will seek reimbursement of their attorneys' fees and litigation expenses in the amount of $550,000, a significant negative multiplier amounting to just 42.99% on their collective lodestar after the deduction of expenses. *See, infra,* §V.D.

### C. Class Members' Overwhelmingly Positive Response to the Settlement

Although the Claims Period does not close until October 10, 2019, as of May 10, 2019, over 5% of direct notice recipients—already have filed claims. Anderson Decl., ¶11. Plaintiffs expect that as the Spring baseball season draws to a close that number will increase significantly.

Not a single objection was filed, nor were any requests for exclusion, despite a robust

notice program. *See* Declaration of Alex Thomas ("Thomas Decl.") at ¶¶10-11 (attached hereto as Exhibit 2).

**ARGUMENT**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." While "[f]ederal courts naturally favor the settlement of class action litigation [,]" *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), the Court must undertake three essential tasks before granting the Settlement final approval.

First, a court must determine whether the proposed Class meets the requirements of Rule 23(a) and (b). *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 223 (N.D. Ill. 2016). Second, courts must confirm that the notice provided to class members satisfied due process and Federal Rule of Civil Procedure 23(e). *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595–96 (N.D. Ill. 2011). Lastly, a court may approve a proposed settlement "only if it determines after a hearing that the proposed settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

The proposed Class easily meets the threshold requirements for certification set forth in Rule 23, the settlement administrator effectively carried out the Notice program this Court previously approved, and the Settlement—which confers substantial financial benefits on Plaintiffs and Class Members alike without the risks of continued litigation—undoubtedly is "fair, reasonable and adequate." *Id.* Accordingly, the Court should grant final certification to the Settlement Class and finally approve the proposed Settlement.

## I.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The benefits of the proposed Settlement can be realized only through final certification of

the proposed Class. Federal Rule of Civil Procedure 23 provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Supreme Court has summarized these four basic requirements as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Class also must meet at least one of the three criteria under Rule 23(b), *Gehrich*, 316 F.R.D. at 223; in this case, that "questions of law or fact common to members of the class predominate, and the class action is a superior method for adjudication." Fed. R. Civ. P. 23(b)(3).

Plaintiffs carry the burden to prove that the class certification prerequisites are met, and that they possess the same interest and suffered the same injury as the Class they seek to represent. *See In re: Sears*, 2016 WL 772785, at *8. However, "the requirements for a settlement class are generally less onerous than those for a trial class." *Id*. That is because "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

The Court previously certified the following Class for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> All individuals in the United States who purchased a new Louisville Slugger Prime 915 BBCOR baseball bat, or a new Louisville Slugger Prime 916 BBCOR baseball bat, or a new Louisville Slugger Prime 917 BBCOR baseball bat, from retailers after April 21, 2015, excluding auction sites such as eBay.

As was the case at preliminary approval, this Court should find that the Class satisfies Rule 23's

requirements and grant final certification.

### A. The Class Satisfies the Requirements of Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that even if the class were limited to 40 members ... that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Gehrich*, 316 F.R.D. at 224 (quotations omitted). This action easily satisfies this requirement: approximately 150 individuals have already submitted claims, and KCC delivered direct notice of the Settlement to well over 2,000 potential Class Members, many of whom already have submitted claims.

#### 2. Commonality

Rule 23(a)(2) provides that a class action may be maintained only if "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury and that their claims ... depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Gehrich*, 316 F.R.D. at 224 (quotations omitted). Plaintiffs need only identify one common question of law or fact to establish commonality. *Martin v. Reid*, 818 F.3d 302, 307–08 (7th Cir. 2016).

This action comfortably satisfies this minimal standard. Continued litigation would require the Court to address a series of questions common to all Class Members, including:

- Whether Defendant's Bats possess the alleged Defect;

- Whether the Bats left Defendant's possession with the alleged Defect;

- Whether Defendant's sales and marketing of the Bats was fraudulent and/or deceptive;

- Whether Defendant's conduct violated the consumer protection statutes of Illinois, Florida, New York, New Jersey, California, Michigan, Massachusetts, Minnesota, Missouri or Washington; and

- Whether Plaintiffs and Class Members sustained damages resulting from Defendant's conduct and, if so, the proper measure of damages, restitution, equitable, or other relief.

In other words, litigation would require the Court to consider whether the Bats are "defective . . . and [] whether Class Members can recover damages based on those alleged defects." *In re: Sears*, 2016 WL 772785, at *8 (finding commonality satisfied due to common questions concerning product's performance and class members' damages). "The claims of all class members depend on the resolution of some or all of these key common questions", and thus satisfy commonality. *Gehrich*, 316 F.R.D. at 225.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. "Typicality is satisfied when a plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Gehrich*, 316 F.R.D. at 224. "Class members claims need not be identical, as long as they are substantially similar." *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1013 (N.D. Ill. 2000) (citations and quotations omitted).

Plaintiffs' claims undoubtedly are typical of those of absent Class Members because "the named representatives' claims have the same essential characteristics as the claims of the class at large." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 342 (N.D. Ill. 2010) (quotations omitted). All Class Members' claims arise from the same operative facts—

Defendants' design, manufacture, and sale of allegedly defective Bats. *See Gehrich*, 316 F.R.D. at 225 ("typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members" (*quoting CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)). And Plaintiffs claims are based on the same legal theories absent Class Members would advance: Wilson's alleged violation of warranty law and consumer protection statutes. *See In re: Sears,* 2016 WL 772785, at *8 (finding typicality where "the claims of the named plaintiffs and other members of the Settlement Class are based upon similar theories, such as breach of express and implied warranty.").

### 4. Adequacy

The final prerequisite for class certification requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement 'is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *In re AT & T,* 270 F.R.D. at 343 (*quoting Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)). In assessing this requirement, courts consider whether (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation. *See In re: Sears,* 2016 WL 772785, at *9; *Zolkos v. Scriptfleet, Inc.*, No. 12 CIV. 8230 GF, 2015 WL 4275540, at *2 (N.D. Ill. July 13, 2015).

Plaintiffs are adequate representatives because their interests and claims are fully aligned with those of the Class. *See In re: Sears*, 2016 WL 772785, at *9. Plaintiffs also have carried out their duties as class representatives by advancing this litigation on behalf of their fellow Class Members. For example, both Mr. Alea and Dr. Hamburg, assisted in the preparation of the

complaint, provided documents and responses to discovery requests made by Defendant, sat for deposition (as well as permitting their minor sons to sit for deposition), and considered and approved the terms of the Settlement. *In re AT & T*, 270 F.R.D. at 343 ("Although a representative plaintiff need not immerse himself in the case . . . the named plaintiff must have some commitment to the case, so that the 'representative' in a class action is not a fictive concept." (*quoting Rand v. Monsanto Co.*, 926 F.2d 596, 598–99 (7th Cir. 1991)).

Class Counsel also easily meet this requirement, as this Court recognized in appointing them counsel for the Class at preliminary approval. ECF 92, ¶ 6. Class Counsel invested, at great risk, considerable time and resources prosecuting this litigation, advanced the interests of the Class at every turn, and ultimately negotiated a Settlement that provides substantial monetary relief to consumers. "Class Counsel have performed satisfactorily on behalf of the class and have demonstrated their competence in representing the class's interests." *Gehrich*, 316 F.R.D. at 226.

In sum, Plaintiffs and Class Counsel have demonstrated they are fully capable of litigating this case and have and will continue to advance the interests of the Class to the greatest extent possible.

## B.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs satisfy these requirements.

### 1.  Common Questions Predominate

Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) in that "both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues

12

'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (7th Cir. 1996) (*citing* 1 Newberg, supra, § 3.10, at 3–56). But courts do not evaluate predominance "simply by counting noses . . . common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[P]redominance requires a qualitative assessment too; it is not bean counting"). The analysis ultimately "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

Common questions predominate in this action because "[t]here is a single, central, common issue of liability: whether [the Bats] [were] defective." *Butler*, 727 F.3d at 801. Indeed, continued litigation would have focused on whether, as alleged, Wilson uniformly misrepresented the Bats' performance properties and sold a product incapable of performing as promised and expected. *See supra*. These issues are subject to generalized proof and are questions common to all Class Members. *See, e.g., id.*; *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *13 (S.D.N.Y. May 1, 2008) ("members of the class allege the same product defect and unlawful sales practice of Sony. These allegations are subject to generalized proof to establish breach of express and implied warranties, violation of consumer protection law and unjust enrichment.").

## 2. A Class Action Is the Superior Method for Adjudicating this Controversy

The class action also must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). When assessing superiority, the Court considers "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." *Id.* In the settlement context, however, the latter consideration is irrelevant because the Court need not consider whether the case, if tried, would pose manageability problems. *See Smith v. Sprint Comms. Co., L.P.*, 37 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem*, 521 U.S. at 591)).

"[I]t is axiomatic that a class settlement is superior to continued litigation[,]" *In re: Sears*, 2016 WL 772785, at *9, particularly where, as here, the Settlement provides Class Members with prompt, predictable, and certain relief, and contains well-defined, systematic and objective procedures to ensure due process. The Settlement also relieves the substantial judicial burdens individual actions would impose on the court system, particularly in light of the size of most individual claims. The zero "opt-out" rate strongly suggests consumers recognize the disproportionate financial burden individual suits would require, demonstrating that this Settlement is "the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs reside throughout the United States and would have a difficult and costly task in seeking relatively small damages solely on an individual basis." *In re AT & T*, 270 F.R.D. at 345 (citations omitted).

In sum, the proposed Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should grant final certification accordingly.

## II.     THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

To evaluate the fairness of class actions settlements, courts within the Seventh Circuit consider the following factors:

> [1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer,
>
> [2] an assessment of the likely complexity, length and expense of the litigation,

[3] an evaluation of the amount of opposition to settlement among affected parties,

[4] the opinion of competent counsel, and

[5] the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Recent Seventh Circuit decisions also counsel courts to evaluate settlements for possible collusion. *See generally Pearson v. NBTY, Inc.*, 772 F.3d 778, 779 (7th Cir. 2014). A reviewing court "do[es] not focus on individual components of the settlements, but rather view[s] them in their entirety in evaluating their fairness," and considers the facts "in the light most favorable to the settlement." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *abrogated on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

Here, the proposed Settlement meets the criteria for final approval. As set forth herein, the proposed Settlement is the product of extensive, and at times contentious, arm's-length negotiations that occurred over an extended period of time. Anderson Decl., ¶¶9-10; *see* 4 *Newberg on Class Actions* § 11.41 (fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's length bargaining, among other considerations). The Settlement also provides substantial relief to the Class while obviating the significant risks of continued litigation, and Class Members have received it enthusiastically. The Settlement is fair, reasonable and adequate in all respects, and merits final approval.

## A. The Settlement Provides Considerable Relief Relative to the Risks of Continued Litigation

"Because the Settlement promises to yield benefits to the class that are significant in light of Defendant[s'] potentially strong defenses should the case proceed to trial, the first factor under *Synfuel* counsels approval." *Schulte*, 805 F. Supp. 2d at 579.

"The most important factor relevant to the fairness of a class action settlement is the . . . the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (7th Cir. 2006) (internal quotations omitted). "In conducting this analysis, the district court should begin by 'quantify[ing] the net expected value of continued litigation to the class.'" *Id.* (*quoting Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)). "To do so, the court should 'estimat[e] the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (*quoting Reynolds*, 288 F.3d at 285). Although the Seventh Circuit has recognized that '[a] high degree of precision cannot be expected in valuing a litigation,' the court should nevertheless 'insist[ ] that the parties present evidence that would enable [ ] possible outcomes to be estimated,' so that the court can at least come up with a 'ballpark valuation.'' *Synfuel*, 463 F.3d at 653 (*quoting Reynolds*, 288 F.3d at 285).

Courts typically begin this analysis by quantifying the value of the class' claims in the aggregate assuming a full victory on the merits, then comparing that value to the settlement's value to a class relative to potential litigation outcomes. *See, e.g., Schulte*, 805 F. Supp. 2d at 579-85. This Court, however, need not consider the value of the Class' claims in the aggregate because Defendants have agreed to an uncapped, claims-made settlement. *See, e.g., Chambers vs. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889, 892 (C.D. Cal. 2016) (evaluating the fairness of the amount offered in claims-made settlement on a per-claim basis); *Edwards v. First Am. Corp.*, No. 07-CV-3796, 2016 WL 8999934, at *7 (C.D. Cal., Oct. 4, 2016) (same). The Court should instead compare the relief the Settlement offers individual Class Members to what they might receive if the case proceeds to trial. *See, e.g., In re: Sears,* 2016 WL 772785, at *9–10. Viewed through that lens, there is no question that the first *Synfuel* factor supports approval.

The Settlement offers substantial relief to every Class Member who files a valid claim and provides minimal proof. The Settlement offers every Class Member whose Bat exhibits a

Compromised Connection a brand new BBCOR bat with a full warranty, and permits Class Members to select a different size bat if they so choose. This Settlement provides Class Members the full benefit of their bargain. This is a particularly favorable result when courts routinely approve settlements that provide the class with 10% or less of its potential maximum recovery. *See Schulte*, 805 F. Supp. 2d at 583.

Further, Settlement administration and Notice expenses will not reduce Class Member compensation because Wilson agreed to separately pay those costs in full. Nor will Class Members see any reduction in the value of their claims because the Settlement is uncapped.

The Settlement's adequacy is particularly apparent when juxtaposed against the risks of continued litigation. A complete victory is anything but certain; Wilson, like every manufacturer that has faced litigation of this type, will contend that individual circumstances and usage preclude certification. Further, Defendant would contend that the twisting Plaintiffs complain of is in most instances the normal result of the patented design, and, in any event, that Plaintiffs cannot prove that any twisting that did occur adversely impacted the effectiveness of the Bats, which would necessarily require a costly and time-consuming battle of the experts.

Plaintiffs are confident they ultimately would have overcome these defenses by establishing that the Bats at issue are inherently defective and prone to fail regardless of how they are used and maintained. If Plaintiffs efforts failed, however, these individualized considerations may have precluded certification of a damages class and instead required "additional proceedings (probably individualized for each plaintiff) . . . to establish damages." *In re: Sears*, 2016 WL 772785, at *9 (considering viability of affirmative defenses in granting claims-made settlement final approval). Indeed, "[p]redominance could fail where liability determinations are individual and fact-intensive, and also where affirmative defenses will require a person-by-person evaluation of conduct to determine whether a defense precludes individual recovery." *Gehrich*, 316 F.R.D.

at 228. Plaintiffs also "would have to demonstrate the manageability of the case; a requirement absent in a class certified for settlement purposes only." *Schulte*, 805 F. Supp. 2d at 583.

The Settlement not only obviates these risks, it also provides Class Members with an immediate, certain and substantial recovery. "'[A] dollar today is worth a great deal more than a dollar ten years from now,' and a major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled." *Id.* at 583 (*quoting Reynolds*, 288 F.3d at 284). The fact that no objections have been filed means that a Final Approval Order will immediately start the clock on Defendant providing Class Members with their new bats, and subsequent claims through October will be processed quickly.

### B. The Complexity, Expense and Likely Duration of the Litigation Supports Approval

Proceeding with litigation would require a substantial investment of time and expense and yield, at best, a marginal incremental benefit to the Class, supporting a finding that the proposed settlement is fair, reasonable, and adequate. *In re: Sears*, 2016 WL 772785, at *10.

The efficiency and financial relief the Settlement provides outweighs the complexity and expense of proceeding with litigation. As is true of most class action settlements, a failure to approve the Settlement "would likely require the parties to retain experts, analyze an enormous quantity of data, and engage in substantial motion practice, which could have resulted in reducing or negating, and certainly would have delayed, any judgment in favor of Plaintiffs, even putting aside the near certainty of appeal." *Gehrich*, 316 F.R.D. at 230. Conversely, the Settlement will yield a prompt, certain, and very substantial recovery for the Class while "avoid[ing] the inherent risk, complexity, time and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 587.

C.    **The Lack of Any Objections or Opt-Outs Further Suggests that Final Approval Should Be Granted.**

Under the Court-approved class notice, Class Members had the opportunity to object to this settlement or to opt out of the class. *See generally* Fed. R. Civ. P. 23(c)(2)(B)(v), (e)(5). Where "few class members have expressed opposition to the settlement," that fact weighs in further support of the reasonableness of the settlement and final approval. *Aranda v. Carribbean Cruise Line*, No. 12-cv-4069, 2017 WL 818854, at *4 (N.D. Ill. Mar. 2, 2017) *aff'd* at 896 F.3d 792 (7th Cir. 2018). As several courts in this district have recognized, when over 99.9% of the class has neither opted out nor objected, that rate of acceptance "is strong circumstantial evidence in favor of" the settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000), *aff'd sub nom.*, 267 F.3d 743 (7th Cir. 2001); *In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (where less than 0.01% of the class opted out or objected, the class member response "support[ed] the reasonableness of the settlement"), *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015). Here, with not a single objection or opt-out, this factor weighs heavily in favor of granting final approval.

D.    **The Opinion of Class Counsel Weighs in Favor of Approval**

Class Counsel has extensive experience litigating consumer class actions and adamantly "believes the Settlement is beneficial to the Class and meets the class certification requirements of Rule 23." *Schulte*, 805 F. Supp. 2d at 586. Indeed, not only has Class Counsel collectively spent well over 1500 hours becoming familiar with the strengths and weaknesses of Plaintiffs' claims, they also base their opinion on their substantial experience successfully resolving consumer class actions involving a host of different products. *See Gehrich*, 316 F.R.D. at 230 ("Class Counsel are experienced TCPA litigators and strongly support the settlement."). "[T]he opinion of competent counsel in this case supports . . . approval of the Settlement." *Schulte*, 805 F. Supp. 2d at 587.

E.     **The Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement Supports Approval**

While this Settlement was reached prior to class certification, substantial efforts were expended in briefing and discovery and the parties well understood the strengths and weaknesses of the case. The fact "[t]hat a case is settled early does not establish that the class was ill-represented or that the settlement was the product of collusion." *Schulte*, 805 F. Supp. 2d at 589. "Instead, the pertinent inquiry is what facts and information have been provided" prior to reaching a settlement. *Id.* at 587 (quotations omitted).

Plaintiffs have developed an informed understanding of this case via discovery and independent investigation. Plaintiffs' counsel carefully reviewed over 13,000 pages of discovery produced by Defendant, deposed four key employees (two of whom were deposed in their individual capacity and as 30(b)(6) witnesses), consulted with knowledgeable experts, and, as a result, were able to engage in meaningful and informed settlement negotiations. Anderson Decl. at ¶6. Having previously brought numerous class actions alleging misrepresentations and breaches of warranty, against a variety of companies, Plaintiffs' counsel understand the applicable law and the strengths and weaknesses of their case. The Court and counsel are in an excellent position, therefore, to evaluate the merits of the proposed Settlement versus the risk and costs associated with continued litigation. Indeed, the fact that Class Counsel "negotiated a fair settlement is evidence that [they] had enough information to effectively represent the class." *Schulte*, 805 F. Supp. 2d at 588 (*citing Mars Steel Corp. v. Continental Ill. Nat. Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987).

## III.     THE NOTICE PROGRAM WAS EFFECTIVE

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." "What comprises the best notice possible depends on various elements, including the size of the class, whether the class members can be easily identified, and the probability notice will reach the intended audience." *Schulte*, 805 F. Supp. 2d at 595.

As a threshold matter, no one has objected to the sufficiency of notice, entitling the Notice provided in this action to a presumption of adequacy. *See, e.g., id.* at 595. Nevertheless, "the notice provided went well beyond what was required." *Gehrich*, 316 F.R.D. at 232.[4]

Where lists of class members and their addresses are readily ascertainable, courts generally demand individual notice. *Schulte*, 805 F. Supp. 2d at 595. KCC, accordingly, successfully delivered Notice—via email or physical mailing—to an overwhelming percentage of all Class Members ascertainable from Defendants' records. *See supra*. This near-perfect success rate greatly exceeds direct notice rates in other settlements finally approved in this District. *See, e.g., In re: Sears,* 2016 WL 772785, at *7 (granting final approval where direct notice reached 89% of intended recipients). The parties' efforts, detailed in the Declarations of Alex Thomas and Carla Peak filed contemporaneously herewith, ensured that all known Class Members received "the best notice that is practicable under the circumstances . . . ." Fed. R. Civ. P. 23(c)(2)(B). *See* Thomas Decl. and Peak Decl. (attached hereto as Exhibits 2 and 3, respectively).

Unfortunately, not all Class Members could be identified from Defendants' records. But, where identification and contact information do not exist "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015). The Parties thus enhanced the Notice program's reach by other means.

---

[4] On December 17, 2018, notice also was sent to the appropriate federal and state officials, as required under the Class Action Fairness Act, 28 U.S.C. § 1715. Thomas Decl., ¶ 2.

KCC implemented an expansive online Notice campaign that targeted individuals rather than particular websites. The banner notice component ran for four consecutive weeks and created a total of over 20,000,000 impressions, and KCC estimates it delivered an approximate 86% aggregate reach. This online campaign proved far more effective than those utilized in connection with other settlements finally approved within this District. *See, e.g., In re: Sears,* 2016 WL 772785, at *7 (finding notice adequate where four-week banner advertisement program effected through Facebook produced just over 11 million impressions); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09 C 7670, 2011 WL 13257072, at *2 (N.D. Ill. Nov. 30, 2011) (finding notice adequate where four-week banner advertisement program effected through Facebook produced just over 18 million impressions). The Parties buttressed these efforts by creating a settlement website and a dedicated toll-free line that provides automated responses to common questions, both of which experienced significant traffic. *See id.* There is no question but that the Notice program was highly effective.

"[U]nder the circumstances of this case, the Settlement Administrator's notice program was the best notice that is practicable and was reasonably calculated to reach interested parties." *In re: Sears*, 2016 WL 772785, at *8. As such, the Notice program's success counsels in favor of final approval.

## IV. THIS COURT SHOULD APPROVE THE CLASS REPRESENTATIVE SERVICE AWARDS FOR PLAINTIFFS ALEA AND HAMBURG.

The Settlement Agreement allows for incentive awards to be paid to both Settlement Class Representatives. SA ¶12.C. "In deciding whether an incentive award is proper, and if so, in what amount, 'relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *In re Sw. Airlines Voucher Litig.*, No. 11

C 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Class Counsel respectfully submits that incentive awards in the amount of $5,000 each for the Plaintiffs are appropriate here. Both Plaintiffs were instrumental in assisting Class Counsel with essential parts of the investigation of the case and Wilson's alleged misrepresentations. Both Mr. Alea and Dr. Hamburg answered numerous discovery requests that included detailed information concerning their purchase of the Bats, their communications with Wilson, and their sons' use of the Bats and experience with the alleged defect. Both Plaintiffs provided deposition testimony in support of their claims and duties as Class Representatives. And both subjected their minor sons to deposition in order to advance their claims and those of the Class. This participation was crucial in reaching the Settlement Agreement. Given their contributions, awards of $5,000 each (or a total of $10,000) are appropriate. *See In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *11 (awarding incentive award of $15,000 where discovery from plaintiffs "improved the prospects of a favorable settlement"). In further support of these requests Class Counsel attaches declarations from Mr. Alea and Dr. Hamburg describing their participation in this litigation. *See* Declarations of George Alea and Curtis Hamburg (attached hereto as Exhibits 4 and 5).

## V. THE COURT SHOULD APPROVE ATTORNEYS' FEES AND EXPENSES

### A. Lodestar vs. Percentage Methods

In class action settlements, the district court has discretion to measure an award of attorneys' fees in an equitable manner, by either the lodestar with multiplier method (based on the hours expended by class counsel advocating for the class) or the percentage method (in relation to the total benefits available to the class where the value of those benefits are capable of reasonable calculation). *Americana Art China Company, Inc. v. Foxfire Printing and Packaging, Inc.*, 743

F.3d 243, 247 (7th Cir. 2014); *see also Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) (holding that both the lodestar approach and the percentage approach are appropriate ways to determine attorneys' fee awards, and the decision of which method to use remains in the discretion of the court.); *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 U.S. Dist. LEXIS 116934, at *13 (N.D. Ill. Oct. 1, 2009) (awarding attorneys' fees based on a percentage of the recovery or lodestar remains within the discretion of the district court). As detailed below, the lodestar method, which was the method used in the most recent Seventh Circuit case to examine an award of attorneys' fees in a consumer class action settlement, is the most appropriate and equitable method for measuring the amount of the attorneys' fees under the circumstances presented by this case, particularly because certain aspects of the settlement, including the improved warranty relief made available to all purchasers of Bats, are difficult to value.

Under the lodestar method, the court calculates a base lodestar by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The court then adjusts the base lodestar using the following twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.; see also Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3 (1983). Many of these factors usually are subsumed, however, within the initial calculation of hours reasonably expended at a reasonable hourly rate. *In re Sw. Airlines Voucher Litig.* ("*Southwest*"), No. 11 C 8176, 2013 U.S. Dist. LEXIS 143146, at *34-35 (N.D. Ill. Oct. 3, 2013) (citing *Anderson v. AB Painting and*

*Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir.2009)). The key factors arguably not subsumed in the lodestar calculation in the present case are the novelty/complexity of the legal issues involved, the degree of success obtained, the fact that fees were contingent on the outcome of the case, and to a lesser extent the preclusion of certain Class Counsel from working on other cases. *Southwest*, 2013 U.S. Dist. LEXIS 143146, at \*35 (citing *Gastineau*, 592 F.3d at 748). Each of these factors readily supports the fees requested in the instant case, which represent a significant negative multiplier from Class Counsel's hourly rates and time expended.

### B. The Lodestar Method is Appropriate Under Seventh Circuit Jurisprudence

The "touchstone" for a district court's calculation of attorneys' fees is the lodestar method. *Gastineau*, 592 F.3d at 748; *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). The Seventh Circuit has recognized that the lodestar approach has certain advantages over the percentage method, including that it alleviates "concerns that a percentage approach result[s] in over-compensation for attorneys," it provides "greater accountability" for the attorneys by requiring an explicit accounting of their hours and rates, and it allows for reasonable compensation based on both the hours worked and the risk assumed in undertaking the case. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Indeed, the most recent Seventh Circuit decision to examine a fee request in a class action utilized the lodestar with multiplier method to calculate attorneys' fees, even in the context of a coupon settlement subject to the Class Action Fairness Act ("CAFA"), which often receive enhanced scrutiny.

In *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015), the parties reached a settlement where the class received only $5 drink coupons to be used on future Southwest flights, and no actual cash benefits. Defendant Southwest also agreed, pursuant to a "clear sailing" agreement, to pay class counsel fees of up to $3 million, which represented a multiple of 2.63 on class counsel's reported lodestar. *Southwest*, 2013 U.S. Dist. LEXIS 143146 at \*7. Despite the lack

of an adversarial filing by defendant Southwest, the district court applied the lodestar method, made certain adjustments to class counsel's lodestar, and ultimately awarded approximately $1.65 million in attorneys' fees, which represented a 1.5 multiplier on class counsel's adjusted lodestar. *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2014 U.S. Dist. LEXIS 84072, at *40 (N.D. Ill. June 20, 2014) (amending earlier holding).

Class member objectors appealed the district court's use of the lodestar-plus-multiplier award. *Southwest*, 799 F.3d at 704. The objectors argued that the district court erred in using the lodestar method, that fees were disproportionately high when compared to the benefits actually claimed by settlement class members, and that the fee should be calculated *only* as a percentage of the benefits actually claimed by class members. *Id*. In rejecting these arguments, the Seventh Circuit held that even in a pure coupon settlement subject to CAFA, which itself raises red flags not present in the instant case as more fully described herein, the lodestar method is a proper method to evaluate attorneys' fees. *Id*. The court noted that while the settlement did involve coupons, the class members received "essentially complete relief" (just as Class Members in the instant case will receive) and that such a settlement "is the model for an adequate settlement." *Id*. at 711. The court further held that in such cases, class counsel "should be compensated accordingly." *Id*. at 712. Such is also the case here.

### C. The Lodestar Method is the Most Equitable Approach

Where, as here, there is no inherent conflict of interest between class counsel and the class with respect to the amount of fees, where class counsel litigated on zealously on behalf of the class; and where class members are receiving real "make-whole" relief allowing every single class member to get exactly what they wanted in this case—a functional and properly warranted three-piece BBCOR baseball bat—the lodestar method is the most appropriate and equitable approach.

First, the lodestar method compensates counsel for actual time spent litigating the case,

where the time resulted in clear and tangible benefits to the class. In light of Defendant's vigorous defense, but for Class Counsel spending that time, Class Members would have received nothing. Use of the lodestar method is more equitable in the instant case, as requiring the fee to be measured only as it relates to the benefits claimed by the class would impose an artificial "cap" on fees that rewards Wilson for discovery strategies that have prolonged this case. *See, e.g., Frank Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Although [defendants] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [defendants] bear the cost of their obstructionist strategy"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side"); *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (increased fee award to plaintiffs justified because of defendant's "Stalingrad defense"); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1997) ("Obviously, the more stubborn the opposition, the more time would be required . . ."). Indeed, placing an artificial cap upon the amount of work that will be compensated could render it economically impracticable for complicated cases like this to be litigated to conclusion. This is particularly applicable here where the full amount of the fee awarded will only impact Wilson and *not* Class Members.

Second, as the Seventh Circuit noted in *Harman*, use of the lodestar method provides "greater accountability" for the attorneys by requiring an explicit accounting of their hours and rates, and it allows for reasonable compensation based on both the hours worked and the risk assumed in undertaking the case. *Harman*, 945 F.2d at 974; *see also Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ("lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee").

Finally, basing a fee calculation on lodestar blunts and eliminates the concern that the class is receiving illusory benefits to garner a high attorneys' fee. The benefits that Class Counsel negotiated were likely the best benefits achievable (even as compared to hypothetical successful trial victories). The same is true of the claims process. Even if liability were established at trial, Class Members would still have had to prove post-trial their entitlement to receive a new bat.

Nor is there any concern here of a close relationship between Class Counsel and the Plaintiffs that could create a conflict of interest between the attorneys and Class Members. Indeed, that Class Counsel here were willing to move forward with the Settlement to secure valuable benefits for Class Members without any certainty with respect to the amount of attorneys' fees and with the risk that this Court may award fees far less than what Class Counsel may deem appropriate and warranted is *prima facie* evidence that there is no conflict of interest between Class Members' recoveries and the payment of attorneys' fees.

In sum, where, as here, Class Counsel have advocated zealously on behalf of the Class for approximately two and a half years without pay or any guarantee that it will ever come, secured significant legal victories along the way—including defeating Wilson's motion to dismiss and gaining access to discovery that was being vigorously withheld by Wilson, and negotiated a Settlement that provides Class Members with relief approximating what they would receive at trial, the lodestar-plus multiplier method most equitably compensates Class Counsel.

### D. Class Counsel's Requested Fees and Expenses are Reasonable

Class Counsel's request of $550,000 in fees and expenses (pursuant to the Parties' agreement that Plaintiffs' request would not exceed that amount) actually represents a negative multiplier from Counsel's lodestar, which has been reduced by over 57% after reimbursement for expenses are deducted:

28

| Firm | Hours Worked | Total Fees | Expenses |
|------|--------------|------------|----------|
| LDG | 156.40 | $93,295.00 | $802.02 |
| CGL | 681.60 | $448,642.50 | $10,322.97 |
| B&H | 627.83 | $455,179.17 | $6,426.95 |
| HFA | 306 | $224,090.60 | $7,489.41 |
| **Total:** | 1771.83 | $1,221,207.27 | $25,041.35 |

*See* Declarations of Katrina Carroll, Charles LaDuca, Jon Herskowitz, and William Anderson (attached hereto as Exhibits 6-8, 1, respectively).

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). The focus is "the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought." *Cooper v. Casey*, 97F.3d 914, 920 (7th Cir. 1996) (emphasis omitted); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

As noted above, the average hourly rates for Class Counsel in this case are at or below rates approved in similar class actions in this circuit. *See, e.g., Abbott v. Lockheed Martin Corp.*, No. 06-cv-701-MJR-DGW, 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015) (finding reasonable rates as follows: $974/hour (25+ years experience); $826/hour (15-24 years exp.); $595/ hour (5-14 years exp.); $447/ hour (2-4 years exp.); $300/hour (Paralegals and Law Clerks); $186/ hour (Legal Assistants)); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037, at *11-12 (S.D. Ill. Jan. 31, 2014) (finding reasonable rates as follows: $892/hour (25+ years exp.); $757/hour (15-24 years exp.); $545/hour (5-14 years exp.); $394/hour (2-4 years exp.); $275/hour (Paralegals and Law Clerks); $170/hour (Legal Assistants)).

However, when the hours Class Counsel has invested in this matter are calculated against the $550,000 fee request minus the $25,041.35 in expenses, the hourly rate drops to $296.28, well *below* the going market rates even for associate attorneys, making the fee request appropriate under any applicable lodestar calculation.

### E.    All Other Factors to be Considered Weigh in Favor of Approval of the Requested Fee

#### 1.   The lawsuit involved complex, novel questions of fact and law

As is evident from the docket, this case did not have a straightforward path to victory for Plaintiffs. It involved complex issues of multi-state class certification, liability standards, physics, engineering, and uncertainty regarding how to prove damages. Plaintiffs successfully thwarted attempts to dismiss the complaint in its entirety and strike Plaintiffs' class allegations, and built a strong factual record by doggedly pursuing discovery and making use of qualified experts.

Similarly, this case was complicated from a factual perspective, involving complex questions regarding a unique bat design, acceptable warranty rates, and the digestion of highly technical information regarding, for example, the appropriate hardness and shape of the rubber cone used in a very technical, patented, bat design.

#### 2.   The degree of success obtained

Plaintiffs achieved a significant degree of success on behalf of the Class, both legally and practically (in terms of benefits being offered to the class). This is not a case like *Redman* or *Pearson*, which were quickly settled prior to any significant legal decisions and for relatively meager or illusory compensation for the class, or even *Southwest*, which was settled prior to class certification for drink coupons but *still* included an agreed 2.65 multiplier on lodestar (reduced by the Court to 1.5). As noted above, Class Members are entitled to receive the full benefit of their bargain. These are not illusory benefits. And, indeed, continued litigation could have resulted in

no benefits at all being offered to the Class. Instead of facing the uncertainty of a potential award in their favor years from now, affording largely the same relief, the Settlement allows Plaintiffs and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the Class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). As noted in *Southwest*, a settlement that provides nearly complete relief to class members is the model of an adequate settlement warranting commensurate compensation for class counsel. 799 F.3d at 704. This weighs in favor of approval of the requested fee.

### 3. Preclusion of other work

All the work described herein that resulted in the Settlement Agreement required significant work from multiple attorneys over the nearly two and a half years this litigation has been pending. The decision to take one case necessarily results in unavailability to take others. Without these concerted efforts and sacrifices by Class Counsel, the Class would not have been offered the significant benefits that the Settlement provides. In sum, this was not a straightforward case factually or legally, and Plaintiffs faced the real possibility of no recovery. Absent Class counsel's advocacy, Class Members would have received nothing. This weighs in favor of the requested fee. *Cook*, 142 F.3d at 1015 ("the unenhanced lodestar does not reflect the factual and legal merits of the claim -- the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, and Attorneys' Fees and Expenses.

Dated: May 22, 2019

Respectfully submitted,

*/s/ Katrina Carroll*

Katrina Carroll
Kyle A. Shamberg
**LITE DEPALMA GREENBERG LLC**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com

William H. Anderson (Pro Hac Vice)
**HANDLEY FARAH & ANDERSON, PLLC**
4730 Table Mesa Drive
Suite G-200
Boulder, CO 80305
Tel. (303) 800-9109
wanderson@hfajustice.com

Jon Herskowitz (Pro Hac Vice)
**BARON & HERSKOWITZ**
9100 S. Dadeland Blvd.
Suite 1704
Miami, FL 33156
Tel.  (305) 670-0101
jon@bhfloridalaw.com

Charles J. LaDuca (Pro Hac Vice)
Brendan S. Thompson (Pro Hac Vice)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW
Washington, DC 20016
Tel. (202) 789-3960
charlesl@cuneolaw.com
brendant@cuneolaw.com

***Class Counsel***